OSCAR A. SCHIERSTEAD, PLAINTIFF-APPELLANT, v. CITY OF BRIGANTINE, A MUNICIPAL CORPORATION OF THE COUNTY OF ATLANTIC AND STATE OF NEW JERSEY AND ELIAS G. NAAME, DEFENDANTS-RE-SPONDENTS.

Argued October 7, 1958—Reargued January 5, 1959—
Decided February 16, 1959

222

Mr. *Josiah E. DuBois, Jr.*, argued the cause for the appellant.

Mr. *Elias G. Naame* argued the cause for the defendant Elias G. Naame, *pro se.*

Mr. *Henry P. Megargee, Jr.*, Assistant City Solicitor of Brigantine, argued the cause for the City of Brigantine (*Mr. John Lloyd, Jr.*, City Solicitor of Brigantine, attorney).

Mr. *William L. Boyan*, Deputy Attorney-General, argued the cause for the Attorney-General, *amicus curiae* (*Mr. David D. Furman*, Attorney-General).

The opinion of the court was delivered by

JACOBS, J. The plaintiff appealed to the Appellate Division from the Law Division's action in dismissing his complaint, entering judgment for the defendants, and denying his motion for leave to amend. We certified the appeal on our own motion under *R. R.* 1:10–1(*a*).

In 1931 the Legislature adopted the Municipal Finance Commission Act which was intended to meet the then public

emergency arising from defaults in the payment of municipal obligations and the resulting impairment of public credit. See *L.* 1931, *c.* 340, *p.* 830. It provided in section 101 that whenever it was made to appear to a justice of the Supreme Court, from a petition by the holder of a bond or note issued by a municipality, that payment was in default for over 60 days, the justice could conduct a summary investigation and enter an appropriate order creating the Municipal Finance Commission for the municipality with all of the powers set forth in the act. See *R. S.* 52 :27–2. In section 103 the Legislature also provided for the creation of the commission where the municipality itself adopted a resolution saying it could not meet its note and bond obligations; although this section did not originally provide, as did section 101, for a summary investigation and order by the Supreme Court justice, it was later so amended. See *L.* 1933, *c.* 330, *p.* 860; *R. S.* 52 :27–3.

Section 403 (now *R. S.* 52 :27–4) set forth that the commission shall continue in force and exercise its powers and perform its duties until all bonds or notes or other indebtedness which has fallen due, and all bonds or notes which shall fall due within one year, and the interest thereon, have been paid or funded or refunded (excepting tax anticipation or tax revenue notes or bonds of the current year) at which time "its authority under this act shall cease," and that thereafter the Commissioner of Municipal Accounts (later the Director of the Division of Local Government) shall have power to continue the employment of the auditor as provided in section 301 (*R. S.* 52 :27–6) and exercise the power of the commission under section 209 (*R. S.* 52 :27–22), until the debt of the municipality is within statutory limitations, at which time "his authority under this act shall cease." In June 1932 the act was amended (*L.* 1932, *c.* 236, *p.* 519) and shortly thereafter bondholders of the City of Brigantine filed a petition resulting in an order by Justice Donges which placed the City of Brigantine under the control and supervision of the Municipal Finance Commission. In 1933 the act was again

amended (*L.* 1933, *c.* 330, *p.* 859) and was supplemented by a provision (now *R. S.* 52:27–5) to the effect that where a justice of the Supreme Court has "heretofore or hereafter made an order annulling, vacating and discharging" any order theretofore made by him under the act, the commission shall cease to continue in the municipality and shall not exercise any powers or perform any duties therein, provided, however, that the commission "shall have heretofore or hereafter determined by resolution that it is not functioning" in the municipality. *L.* 1933, *c.* 375, *p.* 1059. The introducer's statement indicated that the purpose of the supplement was to remove a question which had been raised as to the power of a justice to revoke an order issued by him under the act (see *Senate No.* 460 (1933)); apparently the question had been raised in connection with *In re Armstrong* where Justice Bodine had on June 1, 1933 entered an order finding the City of Garfield to be in default on its bonds but "cancelled, annulled, vacated, and discharged" his order on the following day.

The Municipal Finance Commission Act was amended from time to time thereafter and, as amended, is still in effect. See *R. S.* 52:27–1 *et seq.* It has been passed upon in many judicial decisions. See *Hourigan v. North Bergen Township,* 113 *N. J. L.* 143, 149 (*E. & A.* 1934); *Rippel v. City of Asbury Park,* 118 *N. J. L.* 45 (*Sup. Ct.* 1937); *Shay v. Delaware Township,* 122 *N. J. L.* 313 (*Sup. Ct.* 1939), affirmed 124 *N. J. L.* 124 (*E. & A.* 1940); *Faitoute Iron & Steel Co. v. City of Asbury Park,* 316 *U. S.* 502, 504, 62 *S. Ct.* 1129, 86 *L. Ed.* 1629, 1632 (1942). In *Hourigan,* Justice Heher noted that the act conferred powers upon the commission "somewhat akin to those exercised by receivers of insolvent corporations" (see *Hetrick v. Roberts,* 117 *N. J. L.* 584, 585 (*Sup. Ct.* 1937), affirmed 118 *N. J. L.* 586 (*E. & A.* 1937)), that it was designated to prevent financial collapse and paralysis of municipal functions, and that it was a valid exercise of the State's police powers; and in *Faitoute* Justice Frankfurter noted that New Jersey had "adapted the underlying principles of an equity receiver-

ship to the solution of the problem of insolvent municipalities" [316 *U. S.* 502, 62 *S. Ct.* 1130] and that its legislation did not violate the contract clause of the Federal Constitution.

In *Schierstead v. City of Brigantine,* 20 *N. J.* 164, 167 (1955), the plaintiff attacked a contract of sale which Brigantine had entered into with Mr. Walker and which the Municipal Finance Commission had approved under *R. S.* 52:27–29.1. That statutory provision authorizes the governing body of any municipality "in which the commission is or may be functioning" to sell, with the commission's consent, any municipal real estate at public or private sale. The plaintiff did not contend that the Municipal Finance Commission Act was invalid in its entirety but did urge that *R. S.* 52:27–29.1 was invalid "as an unconstitutional delegation of power"; this court, in an opinion by Justice Wachenfeld which referred to *Hourigan* and *Faitoute* and their expressions of the legislative policy, held that, when read as a whole, the act contained enough to withstand the contention that the delegation lacked the required norm or standard.

In 1956 Brigantine offered for public sale certain lands located at the south end of the city; the plaintiff obtained a temporary restraint which was followed by a modification or clarification of the conditions of sale and by a public sale which resulted in a bid of $30,000 by the defendant Naame, subject to the approval of the Municipal Finance Commission. On July 13, 1956 Brigantine accepted Naame's bid, subject to the approval of the commission, but on August 17, 1956 it rescinded its approval and the commission never acted on the matter. On September 14, 1956 Naame filed a complaint in the Chancery Division seeking specific performance but his action was dismissed under an agreement in which Brigantine undertook to sell the land pursuant to *R. S.* 52:27–29.1 to Naame for the sum of $100,000, subject to the conditions set forth in the agreement and the approval of the commission. The city's resolution authorizing this agreement was adopted on June 21,

1957 and the approval of the commission was granted by a resolution adopted on July 10, 1957. Thereafter, on August 9, 1957 the plaintiff, a resident and taxpayer of Brigantine, filed a Law Division complaint in lieu of prerogative writ in which he alleged (1) that Brigantine's resolution approving the private sale to Naame was illegal and not for the best interests of the taxpayers of Brigantine, and (2) that the Municipal Finance Commission did not on July 10, 1957, and for a long time prior thereto, have any authority to exercise powers under *R. S.* 52:27–1 *et seq.*, and demanded judgment (1) that the resolution authorizing the private sale to Naame be declared void, and (2) that Brigantine "be declared to be not subject to the authority of the Municipal Finance Commission and establishing the date when such authority ceased."

In October 1957 motions were made by the defendants for dismissal of the complaint and for summary judgment. An affidavit by the plaintiff asserted (1) that Brigantine's records disclosed that it had refunded all of its bonds or notes and had made provisions for a cash debt service fund, and (2) that the plaintiff had caused an offer to be made to Brigantine by G. Ernest Dale to purchase the lands for $125,000. An affidavit by George C. Skillman, Director of the Division of Local Government, asserted (1) that the Municipal Finance Commission has functioned in Brigantine from September 15, 1932 up to and including the date of the affidavit, (2) that no application has been made by the city or any other person to annul the 1932 order which originally provided that the commission shall function in Brigantine, (3) that the commission had at no time determined by resolution that it is not functioning in Brigantine, and (4) that the commission had never ceased to function in any municipality where it had ever operated except (a) by court order or (b) by formal application on the part of the municipality followed by (c) consent and concurrence of the commission.

In the Law Division the plaintiff contended that Brigantine was in sound financial condition, that the authority of

the Municipal Finance Commission had automatically terminated upon fulfillment of the conditions expressed in *R. S.* 52:27–4, and that Brigantine had no right to make the private sale of the land. On the other hand, the defendants contended that the commission had never been formally relieved of control, that it was still functioning in Brigantine, and that Brigantine had authority under *R. S.* 52:27–29.1 to make the private sale with the approval of the commission. In an opinion dated November 27, 1957 the Law Division took the position that *R. S.* 52:27–5 was applicable, that since there had been no order of the court and resolution of the commission as therein provided, the commission's control in Brigantine and the city's authority to make the private sale under *R. S.* 52:27–29.1 had not been terminated, and that consequently the plaintiff's complaint must be dismissed. On January 27, 1958 the plaintiff submitted a motion to amend his complaint so as to include charges that Brigantine acted in bad faith and in abuse of its discretion, that the land had a true value of $400,000, and that the price of $100,000 was so woefully inadequate as to shock the conscience of the court. On February 26, 1958 the Law Division dismissed the complaint, entered judgment for the defendants, and denied the motion for leave to amend. On April 8, 1958 the plaintiff duly filed his notice of appeal from the entire judgment.

After hearing argument of the appeal this court invited the Attorney General, who is also counsel for the Municipal Finance Commission, to appear *amicus curiae,* and requested the parties to stipulate, insofar as possible, the pertinent records of the Municipal Finance Commission, and the United States District Court in proceedings initiated by Brigantine in 1946 pursuant to *R. S.* 52:27–40. This was done, and thereafter the appeal was reargued. The records of the commission disclose that it has been and is now exercising the powers granted to it by *R. S.* 52:27–1 *et seq.* in Brigantine and seven other municipalities, and that in 16 instances the supervision and control of the commission in municipalities where it had formerly functioned had been

terminated, including four by court order, five by formal request for release by the municipality concurred in by formal resolution of approval by the commission, five by formal resolution of the commission acting on its own motion, and two by legislation which the commission had recommended to enable consolidation with a municipality not under commission control.

The District Court records disclose that a plan of composition of the debts of Brigantine was approved on November 14, 1947; the plan set forth various provisions relating to the compromise of taxes owing to Atlantic County, the issuance of municipal bonds to creditors, the establishment of a debt service fund, and many other matters, including continued superintendence by the Municipal Finance Commission. The plaintiff urges that examination of the plan of composition sufficiently evidences actual fulfillment of the conditions set forth in *R. S.* 52:27-4; this is disputed by the Attorney General who suggests that whether the conditions have matured "is a matter not readily determinable" and is "primarily within the jurisdiction" ·of the Municipal Finance Commission, and that if this court concludes that the proceedings should be remanded to the Law Division, the Municipal Finance Commission should there be made a party and be given "an opportunity to present its expert view of whether the conditions have been met." This course of procedure would presumably afford fair recognition to the traditional relations between the courts and the State's administrative agencies and to the expertise generally acquired by public officials entrusted by the Legislature with the continuous handling of specialized governmental fields. See *Central R. Co. of New Jersey v. Neeld*, 26 *N. J.* 172, 178 (1958), *certiorari* denied 357 *U. S.* 928, 78 *S. Ct.* 1373, 2 *L. Ed. 2d* 1371 (1958).

The appellant, joined by the Attorney General, contends that *R. S.* 52:27-5 is not pertinent because it was intended to apply only to cases where the original order was improvidently entered and was thereafter vacated; and considerable support may be found in the statutory history and

terminology and in the omission of any provision (comparable to that contained in *R. S.* 52:27–4) vesting certain authority in the Director of the Division of Local Government upon the termination of the powers of the Municipal Finance Commission. For present purposes we accept the contention and turn to *R. S.* 52:27–4 which provides generally that the authority of the commission shall cease when the bonds or notes have been paid or refunded or the payment thereof in cash adequately provided for by a cash reserve. The appellant urges that this occurred on November 14, 1947 when the District Court approved the plan of composition and that the authority of the commission terminated on that date; his position is that the termination was self-executing and wholly automatic without the need for any court order or formal action by the commission, and that although the commission has, in fact, continued its control and supervision in Brigantine, it has done so without any lawful authority whatever. If this far-reaching position were sustained it would bring into serious question the validity of the innumerable real estate transfers and other transactions which have been completed since 1947 in Brigantine under the provisions of the Municipal Finance Commission Act; and it would equally unsettle matters in other municipalities which have acted in the reasonable belief that control and supervision of the commission continues until fulfillment of the conditions in *R. S.* 52:27–4 is evidenced by formal action of the commission or by paramount court order.

■ It is suggested that notwithstanding the untoward consequences, a literal reading of *R. S.* 52:27–4 compels the conclusion that the commission's authority automatically terminates on the actual date of fulfillment of the statutory conditions no matter how uncertain or obscure that precise date may be. But statutes are to be read sensibly rather than literally and the controlling legislative intent is to be presumed as "consonant to reason and good discretion." See *Morris Canal and Banking Co. v. Central Railroad Co.,* 16 *N. J. Eq.* 419, 428 (*Ch.* 1863); *In re Merrill,* 88 *N. J. Eq.*

261, 273 (*Prerog. Ct.* 1917); *May v. Board of Com'rs of Town of Nutley,* 111 *N. J. L.* 166, 167 (*Sup. Ct.* 1933); *Lloyd v. Vermeulen,* 22 *N. J.* 200, 205 (1956). *Cf. In re Norrell's Estate,* 139 *N. J. Eq.* 550, 553 (*E. & A.* 1947); *Borough of Paramus v. Block 1527, Lots 1–2, Assessed to Ridgewood Park Estates,* 42 *N. J. Super.* 369, 375 (*App. Div.* 1956). In the *Lloyd* case this court referred to Judge Learned Hand's well-known remark that "there is no surer way to misread any document than to read it literally." *Guiseppi v. Walling,* 144 *F.* 2d 608, 624, 155 *A. L. R.* 761 (2 *Cir.* 1944), affirmed *sub nom. Gemsco, Inc. v. Walling,* 324 *U. S.* 244, 65 *S. Ct.* 605, 89 *L. Ed.* 921 (1945). In the *Merrill* case the court noted that where a literal reading of the statute leads to absurd consequences "the court must restrain the words" and seek the true legislative intent. And in the *May* case the former Supreme Court had this to say:

"It is an established rule in the exposition of statutes that the intention of the legislature is to be derived from a view of the whole and of every part of the statute, taken and compared together. The real intention, when ascertained, will prevail over the literal sense of terms. When words are not explicit the intention is to be collected from the context and the occasion and necessity of the law and from the mischief felt, and the remedy in view; and the intention is to be taken or presumed according to what is consonant to reason and good discretion. The meaning of general words must be restricted whenever it is found necessary to carry out the legislative intention. The reason and spirit of the statute controls in its interpretation. *Lynch v. City of Long Branch,* 111 *N. J. L.* 148."

■ The need for formal action evidencing termination under *R. S.* 52:27–4 finds support in the uniform administrative and judicial practices since the original passage of the act. On no occasion has the commission ever terminated the exercise of its supervision and control in a municipality without the entry of an appropriate commission resolution or court order. In recent instances the commission has suggested, presumably by way of extra precaution, that the termination be evidenced not only by the commission's resolution but also by a court order. No such termination resolution

or order has ever been antedated to an earlier date on which the conditions expressed in *R. S.* 52:27–4 may have actually been fulfilled. *Cf. City of Asbury Park v. Smock,* 121 *N. J. L.* 487, 488 (*Sup. Ct.* 1939). These administrative and judicial practices may properly be invoked by the defendants in aid of their position, joined by the Attorney General, that *R. S.* 52:27–4 does not call for an automatic termination of authority prior to the formal commission resolution or court order evidencing fulfillment of the prescribed statutory conditions. See *Lloyd v. Vermeulen, supra,* 22 *N. J.,* at *page* 210; *State Department of Civil Service v. Clark,* 15 *N. J.* 334, 341 (1954); *Harper v. New Jersey Mfrs. Cas. Ins. Co.,* 1 *N. J.* 93, 98 (1948); *Kravis v. Hock,* 137 *N. J. L.* 252, 255 (*Sup. Ct.* 1948); *In re Hudson County,* 106 *N. J. L.* 62, 75 (*E. & A.* 1928).

It is well-recognized that a judicial receivership does not terminate without formal order even though the purposes of the receivership have been fulfilled. See *Taylor v. McCarty,* 68 *S. D.* 510, 4 *N. W. 2d* 816, 818 (*Sup. Ct.* 1942); *Fidelity Trustee & Deposit Co. v. Certified Oil Properties,* 189 *Okl.* 673, 119 *P. 2d* 83, 84 (*Sup. Ct.* 1941); *Young v. Miller,* 228 *Iowa* 741, 292 *N. W.* 845, 847 (*Sup. Ct.* 1940); *Hoover-Bond Co. v. Sun-Glow Industries,* 57 *Ohio App.* 246, 13 *N. E. 2d* 368, 370 (*Ct. App.* 1936); *In re Kayser's Estate,* 92 *Minn.* 444, 100 *N. W.* 214, 215 (*Sup. Ct.* 1904); 75 *C. J. S. Receivers* § 92, *p.* 737 (1952). And while it is true that we are not here dealing with the traditional judicial receivership, we are dealing with a statutory proceeding which is analogous and suggests a legislative willingness to invoke pertinent judicial approaches, including the familiar principle expressed in the cited cases. We are satisfied that in the light of this principle, the highly persuasive practical considerations, and the settled administrative and judicial practices, *R. S.* 52:27–4 is fairly to be construed as not calling for a self-executing termination of authority prior to formal commission or court action. This does not at all mean that the commission is free to delay action when it knows or has reason to know that the

statutory conditions have been met; on the contrary, the emergency nature of the legislation (*R. S.* 52:27–65) places upon it an ever-present duty to inquire and bring about the termination of its authority by formal action as soon as it appears that *R. S.* 52:27–4 has been satisfied. Where the municipal officials or taxpayers of the municipality have reason to believe that, notwithstanding the silence of the commission, there should be formal termination of its authority, they may readily seek appropriate relief, ordinarily by application to the commission (see *Central R. Co. of New Jersey v. Neeld, supra*) and, upon its refusal, by application to the court. See *R. R.* 4:88. *Cf. Garrou v. Teaneck Tryon Co.,* 11 *N. J.* 294, 302 (1953); *Koch v. Borough of Seaside Heights,* 40 *N. J. Super.* 86, 93 (*App. Div.* 1956), affirmed 22 *N. J.* 218 (1956).

In his complaint the plaintiff expressly sought a declaration to the effect that the commission's authority in Brigantine had terminated. It would have been preferable if he had originally sought relief from the commission itself, which would then have been called upon formally to declare whether the conditions in *R. S.* 52:27–4 have been satisfied. And it may well be that they have been satisfied notwithstanding the provisions in the 1947 plan of composition relating to continued superintendence by the commission; however, this particular issue has never been dealt with by either the commission or the Law Division, and in view of that circumstance and the limited record before us, this court may not fairly pass upon it. Under the particular circumstances presented, the cause should in the interests of justice now be remanded to the Law Division to enable the plaintiff to join the Municipal Finance Commission as a party defendant and to proceed diligently with his endeavor to establish that the conditions in *R. S.* 52:27–4 have been satisfied; it may be noted that the Attorney General has formally tendered the consent of the Municipal Finance Commission to its joinder in the Law Division where the court will afford to it ample opportunity of expressing its views and meeting the plaintiff's claim.

On the remand, the Law Division should entertain not only the plaintiff's claim that the authority of the commission should be terminated but also his claim that the private sale to Naame should be declared void and set aside. To the extent that this latter claim is sought to be rested upon the total absence of statutory power it must fail, since under our determination that *R. S.* 52:27–4 is not self-executing, *R. S.* 52:27–29.1 is clearly applicable and effective in Brigantine where the commission is still functioning. However, to the extent that it is sought to be rested on considered charges that the sale was authorized by Brigantine in bad faith, or in abuse of its discretion, or for grossly inadequate consideration and not for the best interests of its taxpayers (charges which may ultimately prove to be without foundation but have thus far never been passed upon although they are of vital concern to the community as well as the litigants), the plaintiff should be given fair opportunity of presenting and prosecuting in the Law Division, an appropriately amended complaint setting forth his allegations with sufficient particularity in accordance with the rules of practice. See *R. R.* 4:8–1; *R. R.* 4:9–1; *Untermann v. Untermann*, 19 *N. J.* 507, 518 (1955); *Brown v. Brown*, 2 *N. J.* 252, 255 (1949); *cf. Di Cristofaro v. Laurel Grove Memorial Park*, 43 *N. J. Super.* 244, 248 (*App. Div.* 1957); *Kurtz v. Oremland*, 24 *N. J. Super.* 235, 241 (*Ch. Div.* 1952). See also *R. R.* 4:15–1; *R. R.* 4:15–3; *Sinatra v. National X-Ray Products*, 26 *N. J.* 546, 556 (1958); *Escoett v. Aldecress Country Club*, 16 *N. J.* 438, 450 (1954); *In re Walsh's Estate*, 32 *N. J. Super.* 528, 536 (*App. Div.* 1954).

We find no present occasion for discussing any of the additional points suggested by the parties, other than the contention that the Law Division lacked jurisdiction of the plaintiff's complaint because it was not filed within the 45-day period prescribed by *R. R.* 4:88–15. It was actually filed 49 days after Brigantine authorized the sale to Naame but only 30 days after the commission approved it. We believe that the 45-day period is to be calculated

from the date on which the commission approved the sale and that consequently the plaintiff's action was well within time (see *Tomko v. Vissers,* 21 *N. J.* 226, 235 (1956)); but even if this were not so, the situation would be a proper one for invocation of *R. R.* 4:88–15(c) which allows enlargement of the period of limitation when it is manifest that the interests of justice so require.

Reversed and remanded for further proceedings in conformity with this opinion.

*For reversal*—Chief Justice WEINTRAUB, and Justices HEHER, WACHENFELD, BURLING, JACOBS, FRANCIS and PROCTOR—7.

*For affirmance*—None.