291 N.J. Super. 560 (1996)
677 A.2d 1159
CHRISTOPHER PARKER AND ELISE PARKER, HIS WIFE, PLAINTIFFS-APPELLANTS,
v.
VINCENT J. ESPOSITO AND FRUNGILLO FOOD SERVICE, INC. T/A FRUNGILLO CATERERS; FRUNGILLO CATERERS, INC., DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued June 10, 1996.
Decided June 28, 1996.
*563 Before Judges D'ANNUNZIO, CONLEY and BRAITHWAITE.
John M. Blume argued the cause for appellants (Blume, Vazquez, Goldfaden, Berkowitz & Donnelly, attorneys; Mr. Blume, of counsel; Linda G. O'Connell, on the brief).
Sara A. Friedman argued the cause for respondents (Minichino & Mautone, attorneys; Anthony R. Mautone, of counsel and on the brief).
The opinion of the court was delivered by D'ANNUNZIO, J.A.D.
The mirror of defendants' van struck plaintiff,[1] Christopher Parker, while plaintiff was standing at a bus stop. Plaintiff sustained serious injuries and commenced this action for damages. His wife, plaintiff Elise Parker, sued for loss of consortium.
Defendants conceded liability. After a trial solely on the issue of damages, the jury returned a verdict in favor of plaintiff for the sums of $1,500,000 for his pain, suffering, disability, and impairment of enjoyment of life, $167,000 for past lost income, and *564 $550,000 for future lost income. The jury awarded no damages to Elise.
On appeal, plaintiffs contend that the trial court: (1) erred in denying their motion for a new trial or additur regarding the failure of the jury to make any award to Elise for loss of consortium; (2) erred in denying their motion for a new trial or additur regarding the inadequacy of the jury's award for plaintiff's future lost income; (3) misinterpreted and misapplied N.J.S.A. 2A:15-97, the collateral source statute; and (4) improperly charged the jury on the manner in which it should treat testimony about plaintiff's receipt of Social Security and disability payments.
[At the request of the Appellate Division, a lengthy discussion of the evidence regarding damages contained in the filed opinion has been omitted from the published opinion.]
Regarding the collateral source statute, N.J.S.A. 2A:15-97, the judge granted defendants' request for a credit against future income for the disability benefits plaintiff would be receiving for the next three years and for the Social Security benefits which he was presently receiving. The court ordered that the sum of $133,920, representing $3720 per month from December 1994, through December 1997, that plaintiff was guaranteed from CIGNA Group Insurance, alone or in conjunction with Social Security, be deducted from the $550,000 award, and that the balance, $416,080, be placed into an interest-bearing court account. After December 1997, upon motion by either party, the court would conduct a hearing to determine whether or not plaintiff was entitled to any portion of the $416,080 under the collateral source statute.
Plaintiffs contend that the trial court misapplied the collateral source statute. It provides:
In any civil action brought for personal injury or death, except actions brought pursuant to the provisions of P.L. 1972, c. 70 (C.39:6A-1 et seq.), if a plaintiff receives or is entitled to receive benefits for injuries allegedly incurred from any other source other than a joint tortfeasor, the benefits, other than workers' compensation benefits or the proceeds from a life insurance policy, shall be disclosed to the court and the amount thereof which duplicates any benefit *565 contained in the award shall be deducted from any award recovered by the plaintiff, less any premium paid to an insurer directly by the plaintiff or by any member of the plaintiff's family on behalf of the plaintiff for the policy period during which the benefits are payable. Any party to the action shall be permitted to introduce evidence regarding any of the matters described in this act.
[N.J.S.A. 2A:15-97.]
Our Supreme Court addressed this statute in Kiss v. Jacob, 138 N.J. 278, 650 A.2d 336 (1994). There, the Court held that the statute did not apply to the proceeds of a settlement with a defendant determined not to have been a tortfeasor. Id. at 282, 650 A.2d 336. The Court ruled that the statute focused on the types of benefits contemplated by the common-law collateral source rule which the statute eliminated. Those common-law collateral sources included "life- or health-insurance policies, [benefits] from employment contracts, from statutes such as workers' compensation acts and the Federal Employers' Liability Act, from gratuities, from social legislation such as social security and welfare, and from pensions under special retirement acts." Ibid. The Court observed that the statute's legislative history "suggests strongly that the Legislature's essential concern was with insurance-type benefits." Ibid. Moreover, the Court concluded that the Legislature's purpose in enacting the statute was "to control spiralling automobile-insurance costs." Ibid.
We addressed the statute in Thomas v. Toys "R" Us, Inc., 282 N.J. Super. 569, 660 A.2d 1236 (App.Div.), certif. denied, 142 N.J. 574, 667 A.2d 191 (1995) and Lusby v. Hitchner, 273 N.J. Super. 578, 642 A.2d 1055 (App.Div. 1994). In Thomas, this court affirmed the deduction of social security benefits from an award for future loss of income, thereby reducing the award to zero. Id. at 588, 660 A.2d 1236. In Lusby, we held Medicaid benefits may not be deducted because Medicaid had a right of reimbursement required by federal law.
The issue in the present case is whether the statute applies to benefits to be received post-judgment and, if so, when and under what standard is the deduction to be made. To resolve these issues we must apply principles of statutory construction, *566 which require a determination of legislative intent. See Coletti v. Union County Bd. of Chosen Freeholders, 217 N.J. Super. 31, 35, 524 A.2d 1270 (App.Div. 1987). Sources of legislative intent are the language of a statute, the policy behind a statute, concepts of reasonableness, and legislative history. Shapiro v. Essex County Bd. of Chosen Freeholders, 177 N.J. Super. 87, 424 A.2d 1203 (Law Div. 1980), aff'd. 183 N.J. Super. 24, 443 A.2d 219 (App.Div. 1982), aff'd., 91 N.J. 430, 453 A.2d 158 (1982). It is a general principle of statutory construction that "statutes are to be read sensibly rather than literally and the controlling legislative intent is to be presumed as `consonant to reason and good discretion.'" Schierstead v. Brigantine, 29 N.J. 220, 230, 148 A.2d 591 (1959) (citations omitted). And "where a literal reading of the statute leads to absurd consequences `the court must restrain the words' and seek the true legislative intent." Id. at 231, 148 A.2d 591 (quoting In re Merrill, 88 N.J. Eq. 261, 102 A. 400 (Prerog.Ct. 1917)). In construing a statute we assume that the Legislature intended a reasonable approach, and the statute should be construed to effect a reasonable approach. Roman v. Sharper, 53 N.J. 338, 341, 250 A.2d 745 (1969).
Applying these principles we conclude that the statute requires deduction of benefits to be received by a plaintiff after judgment. The statute by its terms requires deduction of benefits a plaintiff "is entitled to receive." The statute's purpose is to prevent double recovery, thereby giving some relief from the increasing costs of liability insurance. This purpose is furthered by requiring deduction of future benefits. See Thomas, supra, 282 N.J. Super. at 569, 660 A.2d 1236; accord Buchman v. Wayne Trace Local School Dist., 73 Ohio St.3d 260, 652 N.E.2d 952, 958, reconsideration denied, 74 Ohio St.3d 1410, 655 N.E.2d 188 (1995).
We are persuaded, however, that plaintiff's entitlement to future benefits must be determined and fixed when judgment is entered on the verdict. In the present case, the trial court reduced the award for future loss of income by the amount plaintiff is to receive through December 31, 1997 from his former *567 employer's disability policy. The balance of the award is to be held in escrow until a determination, sometime in 1998, of the future benefits, if any, plaintiff will receive through the disability policy or social security. Presumably, there will be periodic reviews of plaintiff's benefit status thereafter. We conclude that court administration of a plaintiff's award beyond entry of judgment is an impractical and unreasonable construction of the statute, and one not intended by the Legislature.
Of course, determining the statutory deductions when judgment is entered, thereby requiring a look into the future, creates the risk of a wrong decision. Anticipated future benefits may not be realized, thereby depriving the injured party of all or part of the jury's award. We are persuaded, therefore, that the phrase "if a plaintiff ... is entitled to receive benefits" refers only to those benefits to be paid post-judgment to which plaintiff has an established, enforceable legal right when judgment is entered and which are not subject to modification based on future unpredictable events or conditions. In other words, future collateral benefits are deductible only to the extent that "they can be determined with a reasonable degree of certainty." Buchman, supra, 652 N.E.2d at 958.
The parties stipulated that the disability policy would pay plaintiff $3,720 per month through December 31, 1997[2] and that the insurer is obligated to pay that amount for that period of time regardless of changes in plaintiff's condition or employability. Thereafter, the insurer's obligation is subject to change, or even elimination, depending on plaintiff's employability. We conclude that the court correctly determined that the statute requires deduction of the amount payable through December 1997, because it was a fixed obligation of the disability insurer when judgment was entered. Plaintiff's entitlement to disability payments or *568 social security payments after December 31, 1997 is uncertain and dependent on facts not capable of being determined when judgment was entered, such as his condition or employability. Indeed, there was substantial evidence at trial that plaintiff can be gainfully employed, though not at the salary he earned prior to the injury. See Buchman, supra, 652 N.E.2d at 964 (holding that a plaintiff who was rendered a permanent C-4 quadriplegic due to the complete transection of his spinal cord had an employment potential and, therefore, it could not be found to a reasonable degree of certainty that he will receive social security benefits beyond 1998). But cf. Haberkorn v. Chrysler Corp., 210 Mich. App. 354, 533 N.W.2d 373, 384 (1995) (holding that future social security disability payments were deductible from plaintiff's award because the statute required deduction of a "previously existing contractual or statutory obligation on the part of the collateral source to pay the benefits"); Frey v. Chester E. Smith & Sons, Inc., 751 F. Supp. 1052, 1056 (N.D.N.Y. 1990) (rejecting plaintiff's argument that future social security benefits should not be deducted because her entitlement to them is speculative). Consequently, plaintiff could not be subjected to any further deduction, and the court erred in placing the balance of the award in escrow pending a review in 1998.
As previously indicated, the court deducted $133,920 from the $550,000 award for loss of future income. That amount represents the total of payments from December 1994 through December 1997 at $3,720 per month. Given the fact that these are periodic payments over a period of time, and consistent with our holding that the deduction must be determined when judgment is entered, we conclude that the deduction may not exceed the present value of the payments as of December 1994.
[At the request of the Appellate Division, the balance of the opinion regarding Elise's claim for loss of consortium has been omitted. The court ruled that an award of zero damages for Elise's loss of consortium could not stand, and remanded for a *569 determination of additur. The court also rejected plaintiff's contention that the award for loss of future income was inadequate.]
The case is remanded for further proceedings.
NOTES
[1] Hereafter, "plaintiff" will refer to Christopher Parker, "Elise" will refer to Elise Parker, and "plaintiffs" will refer to both plaintiffs.
[2] As we understand it, the disability insurer guarantees plaintiff $3,720 per month through a combination of social security disability payments and payments by the insurer.