693 A.2d 938

WAMCO XV LTD., PLAINTIFF–APPELLANT, v. RAYMOND P. FAR-
RELL, JR., LOYOLA FEDERAL SAVINGS BANK, T/A LOYOLA
CONSUMER SERVICES, INC., CAPITAL BANKERS LIFE IN-
SURANCE COMPANY AND FIRST FIDELITY BANK, DEFEN-
DANTS, AND LYNN FARRELL, DEFENDANT–RESPONDENT.

Superior Court of New Jersey
Appellate Division

Argued May 5, 1997—Decided May 20, 1997.

Before Judges LANDAU and WALLACE, JJ.

*Mark S. Kenney* argued the cause for appellant (*Klehr, Harrison, Harvey, Branzburg & Ellers*, attorneys; *Mr. Kenney* and *Francis X. Taney, Jr.*, on the brief).

*Robert Pluese* argued the cause for respondent (*Pluese, Incollingo & Lihotz*, attorneys; *Michael R. Contarino*, on the brief).

The opinion of the court was delivered by

LANDAU, J.A.D.

This is an appeal by a mortgagee, plaintiff Wamco XV, Ltd. (Wamco), from an order of the Chancery Division granting summary judgement to defendant Lynn Farrell (Lynn) and denying its cross motion for summary judgement in a foreclosure suit.

In July 1978, defendant's husband Raymond Farrell (Ray) purchased a home at 4805 Fifth Avenue, Avalon, New Jersey, along with his then wife Mary Katherine Farrell (Mary Katherine). This property is the subject of the foreclosure action here. In 1985, Ray and Mary Katherine separated, with the wife leaving the marital home. They divorced in March 1990. Pursuant to the divorce agreement, Mary Katherine quitclaimed her interest in the property to Ray, who has since lived in the Avalon home.

Ray married defendant Lynn Farrell on April 9, 1990. She immediately moved into the Avalon residence with him.

On July 9, 1991 Ray granted Equibank a mortgage on his residence in Avalon as partial security for a loan modification agreement on loans to his businesses in 1989.[1] The mortgage document was signed by Ray but *not* by Lynn. Ray certified that although Equibank knew that he was married, he told Equibank that "under no circumstances would Lynn be part of this agreement and she would not be signing any such agreement." The certification is not disputed in this regard. Equibank accepted the mortgage.

A default subsequently occurred and forbearance agreements were entered among the borrowers and sureties named in footnote 1 below, Equibank, and eventually Equibank's successor by merger, Integra Bank–Pittsburgh (Integra). The forbearance agree-

---

[1] On July 21, 1989 Liberty Savings Bank (Liberty) made three loans of $700,000, $500,000 and $120,000 to 503 Heron Drive Associates, Harper Packing Company, Concord Foundry Company and Barclay 500, Inc. Ray and his brother Gerard Farrell were surety for the loans. Ray was the general partner of Herr Drive Associates, and president of the other borrowers, each of which was incorporated. Equibank was Liberty's successor by merger.

ments expired on July 1, 1994. Shortly thereafter, Integra assigned the loans and their security to Wamco.

On June 12, 1995, Wamco filed its complaint to foreclose the Avalon property in the Chancery Division, Cape May County. It amended the complaint to include Mary Katherine Farrell but then voluntarily dismissed the action as to her in September 1995.

Wamco amended its complaint a second time on September 14, 1995, to include Lynn Farrell "in order to foreclose any interest she may have as the spouse of Raymond P. Farrell, Jr. and in joint possession of the Mortgaged Land and Premises."

Lynn filed an answer on October 16, 1995 asserting that she is married to Raymond P. Farrell, Jr. and "as such is entitled to joint possession of the premises, which interest is superior to the Plaintiff's interest pursuant to *N.J.S.A.* 3B:28–3 and 3.1."

Lynn filed for summary judgment on March 6, 1996. Wamco opposed the motion and cross moved for summary judgment.

Summary judgment was awarded to Lynn on May 24, 1996. Wamco appeals. We now affirm substantially for the reasons expressed in Judge Callinan's (unreported) written opinion of May 9, 1996. We add the following comments.

Summary judgment was granted based on the Chancery Court's reading of *N.J.S.A.* 3B:28–2 to 28–3.1.[2] Wamco asserts that the

---

[2] *N.J.S.A.* 3B:28–2:

All rights of dower and curtesy are abolished as to the real property of which a married person, or another to his or her own use, shall, on or after May 28, 1980, become seized, during coverture, of an estate of inheritance. *N.J.S.A.* 3B:28–3:

As to real property occupied jointly by a married person with his or her own spouse acquired on or after May 28, 1980, as their principal matrimonial residence, every married person shall be entitled to joint possession thereof with his or her spouse during their marriage, which right of possession may not be released, extinguished or alienated without the consent of both spouses except by judgment of a court of competent jurisdiction. All other real property owned by either spouse which is not the

trial court erroneously applied the statute. It contends that 3B:28–3 "does not apply to the property at issue" because the statute provides that the spouse's right of joint possession may not be "released, extinguished or alienated without consent of both spouses" only as to "real property occupied jointly by a married person with his or her own spouse acquired on or after May 28, 1980, as their principal matrimonial residence." Ray purchased the Avalon property in 1978 during his previous marriage.

We note that the predecessor statute to *N.J.S.A.* 3B:28–2 and 28–3 was *N.J.S.A.* 3A:35–5. It provided that the right of every married person to joint possession without the threat of unilateral alienation applies to "real property occupied jointly with his or her spouse, as their matrimonial residence." There was no acquisition date provision in the earlier statute.

The trial judge below reasoned, however, that the date was not inserted into the new version of the statute in order to "work a dramatic change to the prior statute." We agree. Reading Section 3 together with Section 3.1, it is evident that the Legislature did not intend to single out for disparate treatment only those spouses who occupied a marital residence prior to the date it was mortgaged, solely because the residence was acquired before May 28, 1980. From an equal protection standpoint, we can discern no substantial relationship between the suggested classification and any identifiable governmental purpose. *See*

---

principal matrimonial residence may be alienated by without the consent of both spouses.

*N.J.S.A.* 3B:28–3.1:

The right of joint possession to the principal matrimonial residence as provided in *N.J.S.* 3B:28–3 is subject to the lien of a mortgage, irrespective of the date the mortgage is recorded, provided:

a.   The mortgage is placed upon the matrimonial residence prior to the time that title to the residence was acquired by the married person;  or

b.   The mortgage is placed upon the matrimonial residence prior to the marriage;  or

c.   The mortgage is a purchase money mortgage;  or

d.   The parties to the marriage have joined in the mortgage.

*Barone v. Dep't of Human Services,* 107 *N.J.* 355, 368, 526 *A.*2d 1055 (1987).

The May 1980 date was obviously selected to coincide with the date of the abolition of dower and curtesy as to marital property other than the principal matrimonial residence, not to deprive a small group of spouses of both dower/curtesy rights and joint possession rights in their residence during marriage.

"In the absence of a clear manifestation to the contrary, we shall not impute to the Legislature an intention to change established law." *State v. Dalglish,* 86 *N.J.* 503, 432 *A.*2d 74 (1981); *see also Elberon Bathing Co. v. Ambassador Ins. Co.,* 77 *N.J.* 1, 18, 389 *A.*2d 439 (1978); *Singleton v. Consolidated Freightways Corp.,* 64 *N.J.* 357, 362, 316 *A.*2d 436 (1974). Furthermore, "it is a general principal of statutory construction that 'statutes are to be read sensibly rather than literally and the controlling legislative intent is to be presumed as "consonant to reason and good discretion." ' " *Parker v. Esposito,* 291 *N.J.Super.* 560, 566, 677 *A.*2d 1159 (App.Div.), *certif. denied,* 146 *N.J.* 566, 683 *A.*2d 1162 (1996) (quoting *Schierstead v. Brigantine,* 29 *N.J.* 220, 230, 148 *A.*2d 591 (1959)). In construing a statute "we assume that the Legislature intended a reasonable approach, and the statute should be construed to effect" such an approach. *Parker, supra; see also Essex Crane Rental Corp. v. Division on Civil Rights,* 294 *N.J.Super.* 101, 106, 682 *A.*2d 750 (App.Div.1996).

In this case, Lynn obviously has neither a vested nor inchoate right of dower as she was married after the abolition of dower. She is nonetheless protected by an inalienable right to joint possession of the matrimonial residence during marriage.[3]

Wamco argues that *N.J.S.A.* 3B:28–3 requires contemporaneous acquisition of the principal matrimonial property by both spouses.

---

[3] Even if Wamco were correct in arguing that *N.J.S.A.* 3B:28–3 requires the residence to be acquired after May 28, 1980, the property interest quitclaimed in 1990 to Ray as part of the divorce agreement by his first wife was arguably necessary to complete his acquisition.

Interpretation of a statute, however, involves consideration of the disputed portion of the statute in the context of the entire act. *See Midlantic National Bank v. Peerless Ins. Co.*, 253 *N.J.Super.* 137, 143, 601 *A.*2d 243 (App.Div.1992) ("The principal source of intention however must, as is usually the case, be the legislation itself, read as a whole."). In this case, *N.J.S.A.* 3B:28–3.1 illustrates the legislative scheme, stating, in part, that the "right of joint possession to the principal matrimonial residence as provided in *N.J.S.* 3B:28–3 is subject to the lien of a mortgage, irrespective of the date the mortgage is recorded, provided: ... (b) the mortgage is placed upon the matrimonial residence prior to marriage." It is clear that the Legislature contemplated only that in a case where one spouse owned the matrimonial residence prior to marriage, the encumbrance must be placed on the property before marriage in order to avoid the spouse's right to joint possession. Read together with section 3.1, *N.J.S.A.* 3B:28–3 does not require "contemporaneous acquisition," as asserted by Wamco. *See Glatthorn v. Wisniewski*, 236 *N.J.Super.* 504, 507, 566 *A.*2d 242 (Ch. Div.1989); *Pilone v. Blanda*, 226 *N.J.Super.* 397, 404, 544 *A.*2d 439 (Ch.Div.1988)(each recognizing that *N.J.S.A.* 3B:28–3 would apply even when husband acquired the property before marriage.).

The order under review is affirmed.