Michael MANDILE, Individually, and Michael Mandile, Administrator of the Estate of Maria Mandile, Plaintiff(s),

v.

CLARK MATERIAL HANDLING COMPANY, et al., Defendants.

Civ. No. 02–3285 (WGB).

United States District Court, D. New Jersey.

Jan. 13, 2004.

Alan D. Bell, Montclair, NJ, for Plaintiffs.

Kenneth R. Meyer, Porzio, Bromberg, & Newman, P.C., Morristown, NJ, for Defendant Terex Material Handling Corp.

## OPINION AND ORDER

BASSLER, District Judge.

After about a three week trial, the jury returned a verdict on October 15, 2003 awarding Plaintiff Michael Mandile $550,000, and $100,000 to the Estate of Maria Mandile. Defendant now raises two

issues that the Court must decide before final judgment can be entered in this case: (1) the amount by which the judgment should be reduced to account for social security disability benefits received by Plaintiff; (2) whether prejudgment interest should be awarded on a general verdict that does not segregate between future economic loss and non-economic damages.

The Court heard oral argument on November 17, 2003.

## I. DISCUSSION

### A. Set–Off For Social Security Disability Benefits

The collateral source rule provides:

In any civil action brought for personal injury or death, except actions brought pursuant to the provisions of P.L.1972 c. 70 (C. 39:6A–1 et seq.), if a plaintiff receives or is entitled to receive benefits for the injuries allegedly incurred from any other source other than a joint tortfeasor, the benefits, other than workers' compensation benefits or the proceeds from a life insurance policy, shall be disclosed to the court and the amount thereof which duplicates any benefit contained in the award shall be deducted from any award recovered by the plaintiff, less any premium paid to an insurer directly by the plaintiff or by any member of the plaintiff's family on behalf of the plaintiff for the policy period during which the benefits are payable. Any party to the action shall be permitted to introduce evidence regarding any of the matters described in this act.

N.J.S.A. 2A:15–97. Under the collateral source rule, social security benefits to be received by a plaintiff after judgment must be deducted. *Parker v. Esposito*, 291 N.J.Super. 560, 566, 677 A.2d 1159 (App. Div.1996). However, "future collateral benefits are deductible only to the extent that 'they can be determined with a reasonable degree of certainty.'" *Id.* at 567, 677 A.2d 1159. That is, the collateral source rule's phrase " 'if a plaintiff ... is entitled to receive benefits' refers only to those benefits to be paid post-judgment to which plaintiff has an established, enforceable legal right when judgment is entered and which are not subject to modification based on future, unpredictable events or conditions." *Id.* at 567, 677 A.2d 1159. In reaching that conclusion, the Appellate Division recognized that "[a]nticipated future benefits may not be realized, thereby depriving the injured party of all or part of the jury's award." *Id.*

Plaintiff states that the net social security benefits payable to him was $30,556.40 for 2002. Because there is no contention that that amount is subject to modification or uncertain, the gross judgment of $550,000.00 should be reduced by that amount, leaving a net judgment of $519,443.60.

Plaintiff further suggests that there should not be any social security offset beyond the $30,556.40 because he has not received any further benefits and he will not be entitled to social security benefits until his worker's compensation benefits cease, which will be March 31, 2005. Defendant, however, claims that it is entirely possible that Plaintiff will receive social security disability benefits after March 31, 2005 because Plaintiff testified that once his worker's compensation benefits expired, he would begin to receive $960 per month in social security disability benefits; further, under the social security regulations, a finding of disability is periodically reviewed by the Social Security Administration. Thus, noting that it is the plaintiff's burden to supply documents and records showing what duplicate benefits have and will be received, Defendant urges

that Plaintiff must establish that he is not entitled to or will not receive additional social security benefits, or that the Social Security Administration will never again review Plaintiff's disability determination and award future benefits.

During oral argument, Plaintiff's counsel agreed to make a written inquiry to the Social Security Administration to determine whether Plaintiff would in fact be entitled to social security benefits in April 2005. Plaintiff made such an inquiry by letter dated December 1, 2003. As confirmed during a telephone conference with the Court on December 23, 2003, counsel for both sides agreed that the Court should only wait a couple of weeks for a response from the Social Security Administration before rendering its decision. Having waited a few weeks and having received no word from the Social Security Administration, the Court must issue its decision based on what information it has available.

While it is Plaintiff's burden to show what amount should be offset, Defendant has cited no case that stands for the proposition that a plaintiff must establish with a reasonable degree of certainty that he will *not* receive any future benefits. Rather, to be deductible, the benefits to be paid post-judgment must be those "to which plaintiff has an established, enforceable legal right when judgment is entered and which are not subject to modification based on future, unpredictable events or conditions." *Parker*, 291 N.J.Super. at 567, 677 A.2d 1159. Here, there is insufficient evidence to show that Plaintiff has an established, enforceable legal right to any social security benefits after March 2005, or that any such benefits will not be modified based on any future reviews by the Social Security Administration of Plaintiff's disability determination. Thus, the offset for social security disability benefits will be limited to $30,556.40.

 Finally, for each year of the years for which the social security deduction is being made, Plaintiff seeks credit in the amount of $1,091.40 for social security contributions he previously made. *See Woodger v. Christ Hosp.*, 364 N.J.Super. 144, 154, 834 A.2d 1047 (App.Div.2003). In support thereof, Plaintiff has submitted his W–2 forms, which show that the total social security tax withheld for 1995 was $1,091.40. Although Defendant states that due to an illegible copy of the W–2 forms, it cannot take a position as to whether the amount of credit sought by Plaintiff is correct, Defendant concedes that Plaintiff is entitled to a credit against the social security offset in accordance with *Woodger*. Accordingly, the collateral source deduction of $30,556.40 will be reduced by $1,091.40, resulting in a final net judgment of $520,535.00.

### B. *Prejudgment Interest*

#### 1. *Prejudgment Interest On Michael Mandile's Verdict*

 Federal courts sitting in diversity should apply state court rules on prejudgment interest. *See Condus v. Howard Savings Bank*, 999 F.Supp. 594, 597 (D.N.J.1998). New Jersey Court Rule 4:42–11(b) generally permits prejudgment interest in products liability actions "provided that in exceptional cases the court may suspend the running of such prejudgment interest." However, Rule 4:42–11(b) does not allow prejudgment interest on any recovery for future economic losses. In contrast, prejudgment interest is not barred where there is a verdict for noneconomic loss, i.e. pain and suffering, or past economic loss. Thus, the comments to subsection (b) states: "[c]onsequently, the jury will have to return, by special interrogatory, discrete verdicts for past

economic damages, future economic damages, and a single lump sum for non-economic damages." Pressler, Current N.J. Court Rules, Comment on R. 4:42–11(b).

Here, the verdict sheet was the subject of two final pretrial conferences, one before then Magistrate Judge Cavanaugh and the other before Magistrate Judge Arleo. The parties then consented to a verdict sheet, which was filed on October 15, 2003. Clearly, there was plenty of time and opportunity to amend the verdict sheet to request segregated damages. Nonetheless, the jury verdict sheet did not ask the jury to render discrete verdicts on separate items of damages. Defendant argues that Plaintiff's failure to request discrete verdicts despite numerous opportunities to do so was a waiver of that right, and that therefore, prejudgment interest should not be allowed in this case because it cannot be determined whether the jury verdict is for non-economic loss or for future economic loss. Further, Defendant claims that based on the testimony of Plaintiff's economist David Bunin, it is "entirely plausible that the jury's entire verdict was intended to give the plaintiff a recovery for future economic loss." Def.'s Oct. 17, 2003 Letter, at 2; Def.'s Oct. 27, 2003 Reply Letter, at 3.

In response, Plaintiff blames Defendant for failing to request a breakdown of damages on the jury verdict form. Moreover, to the extent that Defendant is relying on the "exceptional case" language of R. 4:42–11(b) to seek suspension of the running of prejudgment interest, Plaintiff contends that precluding him from obtaining prejudgment interest for past economic loss and non-economic loss, which he would otherwise be entitled to, would be inequitable and contrary to the spirit and intent of the rule. See Condus, 999 F.Supp. at 598 (noting that "exceptional circumstances" exist only "where it is demonstrated that

the policy, spirit and intent of the rule are patently inapposite to the circumstances at hand.")

Additionally, Plaintiff argues that the policies behind the "exceptional case" provision, particularly that of discouraging a defendant's delay by inducing prompt defense consideration of settlement possibilities, would be undermined if prejudgment interest is not awarded here. See Ruff v. Weintraub, 105 N.J. 233, 244–46, 519 A.2d 1384 (1987) (noting that prejudgment interest rule is grounded on two policies: (1) to compensate a plaintiff for the loss of income that he would have earned on a judgment paid earlier; and (2) to discourage defendant's delay by inducing a prompt defense consideration of settlement possibilities).

Defendant, however, does not rely on the "exceptional case" language of R. 4:42–11(b) to seek suspension of the running of prejudgment interest. Defendant is simply arguing that prejudgment interest should not be allowed pursuant to Rule 4:42–11(b)'s express prohibition of prejudgment interest on future economic losses. Thus, the "exceptional case" portion of the rule is not at issue here.

Finally, Plaintiff points out that Rule 4:42–11(b) is subject to Rule 1:1–2, which permits all rules to be relaxed to secure a just determination. According to Plaintiff, it is just to make Defendant shoulder the loss as between an "innocent Plaintiff, and a Defendant, who presumably was aware of Rule 4:42–11(b) but, nonetheless did not request discrete jury verdicts." Pl.'s Oct. 20, 2003 Letter, at 3.

However, a similar argument can be made for the defense. Although Plaintiff's counsel states that he was unaware of the recently amended Rule 4:42–11(b) until the prejudgment interest issue was raised by Defendant, it can nonetheless equally be asserted that Defendant should not be

prejudiced by Plaintiff's inability to prove that no part of the verdict was for future economic loss.

Because the case law pertaining to Rule 4:42–11(b) does not address this issue of whether prejudgment interest should be awarded on a nonsegregated verdict, the Court will look to federal law for guidance. In examining whether prejudgment interest should be awarded under the Federal Employers' Liability Act, the Third Circuit observed:

> It has been suggested that when a jury has been asked to render only a general verdict, it might be presumed to have included prejudgment interest in its calculation of damages. "[N]o one would be so naive as to suppose that juries do not throw into the scales the years that a plaintiff may have had to wait before his case can be heard by a jury." *Moore–McCormack*, 295 F.2d at 594; *see also Hooks v. Washington Sheraton Corp.*, 642 F.2d 614, 618–19 (D.C.Cir. 1980) (Mikva, J., dissenting) ("The jury's verdict is an assessment of the plaintiff's damages as of the date it is returned and includes interest as damages."); *cf.* Restatement (Second) Torts § 913(2) (not allowing interest, but allowing "the time that has elapsed between the harm and the trial [to] be considered in determining the amount of damages.").

*Poleto v. Consolidated Rail Corp.*, 826 F.2d 1270, 1277 (3d Cir.1987), *overruled on other grounds, Kaiser Aluminum & Chemical Corp. v. Bonjorno*, 494 U.S. 827, 110 S.Ct. 1570, 108 L.Ed.2d 842 (1990); *see also Wilson v. Burlington Northern Railroad*, 803 F.2d 563, 567–68 (10th Cir.1986) (McKay, J., concurring) ("In all properly presented cases, so long as not expressly forbidden by clear, legislative mandate or private agreement, I would always award prejudgment interest on the amount of proven economic losses incurred prior to

the date of judgment. Since we are here faced with a general verdict not properly segregated into its component parts [of actual economic loss and non-economic damages], that task is now impossible. Plaintiff failed to timely present the matter based on sound testimony and proper instructions or interrogatories and must bear the burden of that failure.")

In this case, because Plaintiff did not request discrete verdicts, therefore rendering it impossible to determine whether and to what extent the jury verdict represents future economic loss, non-economic loss, or past economic loss, prejudgment interest will not be awarded on Plaintiff Michael Mandile's $550,000 jury verdict (less the set-off, discussed *supra* ).

### 2. *Prejudgment Interest On Maria Mandile's Verdict*

■ Neither party has addressed whether prejudgment interest should be awarded on the jury's verdict for the Estate of Maria Mandile, and if so, when prejudgment interest should begin to run. The Court first notes that the $100,000 jury verdict for the Estate of Maria Mandile could not have been for future economic loss given that her claims were solely for loss of consortium, and therefore, prejudgment interest will be awarded on that portion of the total verdict.

■ Second, the Court must decide when prejudgment interest should begin to run on Plaintiff Maria Mandile's verdict. Initially, the Court notes that although both parties cursorily address this issue (with respect to Michael Mandile's verdict), neither side cites any law to support their respective positions.

Defendant maintains that if prejudgment interest is awarded, it should only begin to run from July 8, 2002, when the new complaint naming Terex Material

Company was filed, rather than from the filing of the first complaint in April 1998. The first complaint was administratively dismissed in April 2000 when Defendant Clark Material Handling Company ("Clark") filed for bankruptcy. As correctly noted by Defendant, the second complaint was given a new docket number, and it was that case that proceeded to trial.

Plaintiff, however, argues that the prior action was dismissed by Consent Order for reasons of expediency because defense counsel indicated he needed additional time to obtain an expert witness. That Consent Order was entered on April 15, 2002. Plaintiff further notes that Magistrate Judge Arleo proposed administrative dismissal subject to a number of safeguards clearly relating the order back to the original action. Finally, not only was it agreed that this Court would continue handling the matter, the new complaint also specifically referenced the prior action.

■ The Court may suspend prejudgment interest from April 1998 until the filing of the new complaint on July 8, 2002 if this action constitutes an "exceptional case" under Rule 4:42–11(b). *See, e.g., Electric Mobility Corp. v. Bourns Sensors/Controls, Inc.,* 87 F.Supp.2d 394, 402–04 (D.N.J.2000) (examining whether action that was administratively terminated to allow parties to seek alternate dispute resolution and that remained dormant for five years was "exceptional case" under Rule 4:42–11(b) justifying suspension of prejudgment interest for five year administrative termination period). Under the New Jersey prejudgment interest rule, the " 'judicial suspension of interest extends only to those cases where an award of interest would neither advance the aim of early settlement nor constitute fair compensation to plaintiff for money withheld and used or presumptively used by defendant.' " *Dall'Ava v. H.W. Porter Co.,* 199 N.J.Super. 127, 130, 488 A.2d 1036 (App. Div.1985) (citing *Kotzian v. Barr,* 152 N.J.Super. 561, 566, 378 A.2d 256 (App. Div.1977), *rev'd on other grounds,* 81 N.J. 360, 408 A.2d 131 (1979)).

The New Jersey Appellate Division has expressly rejected the idea that an "exceptional case" must be due to some fault of the plaintiff. *See Dall'Ava,* 199 N.J.Super. at 130–31, 488 A.2d 1036. In fact, "New Jersey courts have found exceptional circumstances where delays in the litigation have resulted not from the conduct of either party but because of a judicial delay . . ." *Electric Mobility Corp.,* 87 F.Supp.2d at 403. For example, in *Dall'Ava,* at issue was whether the trial court properly denied prejudgment interest for the four months that the litigation was delayed because of a court order stay following the bankruptcy filing by one of the defendants. The Appellate Division affirmed the decision of the lower court, finding that the court ordered stay created an exceptional situation notwithstanding that the four month delay had not been caused by either party's conduct. In so holding, the court noted that awarding prejudgment interest for the period of the stay would "not constitute fair reimbursement to plaintiff for monies withheld and used by defendant," but rather, would "have a punitive effect—a result not intended by the rule." *Dall'Ava,* 199 N.J.Super. at 131, 488 A.2d 1036.

In view of the fact that the Appellate Division found a bankruptcy triggered four month stay to be an exceptional case, this Court finds that any gap resulting from Clark's bankruptcy filing also constitutes an "exceptional case" to suspend running of prejudgment interest. Indeed, allowing prejudgment interest on approximately 5½ years—from April 1998 until October

2003—would penalize Defendant for no fault of its own. *See Dall'Ava,* 199 N.J.Super. at 130, 488 A.2d 1036 ("fairness and justice would not be served by the running of interest during the period of a plaintiff's inability or unwillingness to proceed with the case where defendant is not at fault").

However, it would also be unfair to Plaintiffs to permit prejudgment interest for the shortened period from July 2002 until October 2003 given that the subsequently filed case presumably progressed faster towards trial because, for example, discovery taken in the previous action could be used in the new action. *See* Consent Order, at ¶¶ 4–5.

Thus, guided by *Dell'Ava,* the Court will award prejudgment interest on Maria Mandile's verdict beginning from the filing of the original complaint in April 1998, but will suspend the *running of prejudgment* interest from April 28, 2000, the date that the original case was administratively terminated, until July 8, 2002, when the second complaint was filed.

## II. *CONCLUSION*

For the foregoing reasons, the offset for social security disability benefits will be limited to $30,556.40, but $1,091.40 will be credited to the collateral source deduction for social security contributions Plaintiff previously made. No prejudgment interest will be awarded on Plaintiff Michael Mandile's $550,000 verdict, but will be awarded on the Estate of Maria Mandile's $100,000 verdict. Prejudgment interest on the Estate of Maria Mandile's verdict shall begin to run from the filing of the original complaint, 98–CV–2510(WGB) in April 1998, but will be suspended from April 28, 2000 until July 8, 2002.

Plaintiff's counsel is directed to prepare a judgment in conformity with this Opinion and forward it to Defense counsel for consent as to form.

**So Ordered.**