Augustus CONDUS, Christopher C. Harding, John D. Connor, Abram Schmier, Howard Phillips and David Oltchick, Plaintiffs,

v.

HOWARD SAVINGS BANK and The Federal Deposit Insurance Corporation, as Receiver for Howard Savings Bank, Defendants.

Leo A. GUTMAN and Georgia Gutman, as Joint Tenants, Plaintiffs,

v.

HOWARD SAVINGS BANK and The Federal Deposit Insurance Corporation, as Receiver for Howard Savings Bank, Defendants.

Nos. Civ. 89–5131(WGB), Civ. 91–2465(WGB) and Civ. 90–2397(WGB).

United States District Court, D. New Jersey.

March 19, 1998.

Jared B. Stamell, Stamell & Schager, LLP, New York City, Joseph J. Tabacco, Jr., Berman Devalerio Pease & Tabacco, LLP, San Francisco, CA, for Plaintiffs.

Robert Novack, Kenneth J. Cesta, Edwards & Angell, Short Hills, NJ, Ealy Bennett, Federal Deposit Insurance Corporation, Legal Division, East Hartford, CT, for Defendant Federal Deposit Insurance Corporation.

## OPINION

BASSLER, District Judge.

A jury found for Plaintiffs on their state law negligent misrepresentation claims against The Howard Savings Bank ("Howard"). Plaintiffs now move for pre- and post-judgment interest on the amount they are due, $1,532,575.41, which represents the jury award less amounts deducted as a result of the jury's findings of comparative negligence and less set offs for previously settling defendants. Defendant Federal Deposit Insurance Corp. ("FDIC"), acting as receiver of the failed Howard, opposes this motion, arguing that any award of interest is improper. This Court has jurisdiction pursuant to 28 U.S.C. § 1367 (supplemental). For the reasons stated below, the Court holds that: (1) Plaintiffs are entitled to full pre-judgment interest from June 10, 1991, the date Plaintiffs' suit was filed, through October 2, 1992, the date the FDIC was appointed receiver of Howard; (2) after October 2, 1992, Plaintiffs are entitled to pre-judgment interest from the time, and to the extent, that a ratable distribution was paid to other creditors of Howard; (3) pre-judgment interest is to be calculated pursuant to New Jersey's R. 4:42–11(b); and (4) Plaintiffs are entitled to post-judgment interest, calculated pursuant to 28 U.S.C. § 1961, to the extent that a ratable distribution has been paid to other creditors.

## I. BACKGROUND

On June 10, 1991, Plaintiffs filed an action against Howard asserting state law claims of fraud and negligent misrepresentation. On October 2, 1992, the FDIC was appointed as receiver for Howard. The FDIC began paying Howard's approved claimants as early as December 31, 1992. According to Plaintiffs' undisputed submissions, the FDIC made ratable distributions on all approved claims as follows:

| | |
|---|---|
| 12/31/92 | 75.0% |
| 02/08/94 | 11.0% |
| 06/14/94 | 03.0% |
| 06/30/95 | 05.5% |
| Total: | 94.5% |

(Affidavit of Jared B. Stamell ¶¶ 5–6 & Exs. B, C.) As of October 27, 1997, all approved unsecured creditors have been paid 95.56% of the principal portion of their claims. (Id. ¶ 7; Affidavit of Peter H. MacDonald, Ex. A.) According to the FDIC, however, these creditors are still owed over $137 million, which represents the remaining 4.44% of the principal portion of their claims. (Affidavit of Peter H. MacDonald ¶¶ 7–8.)

The parties went to trial in November 1997. The jury returned a verdict in favor of Plaintiffs on their negligent misrepresentation claims. After taking into account amounts received from previously settling Defendants and the jury's findings concerning Plaintiffs' comparative negligence, the principal amount owed to each Plaintiff, according to the submissions of the parties, is as follows:

| | |
|---|---|
| Augustus Condus | $356,530.88 |
| Christopher C. Harding | $ 59,584.44 |
| John D. Conner | $356,530.88 |
| Abram Schmier | $183,118.05 |
| Howard Phillips | $288,405.58 |
| David Oltchick | $288,405.58 |
| Leo A. Gutman | $ 0.00 |
| Georgia Gutman | $ 0.00 |
| Total | $1,532,575.41 |

Plaintiffs seek to have pre- and post-judgment interest added to their jury award. The remaining assets of Howard are sufficient to cover the jury's award as well as any awarded interest. (Affidavit of Jared B. Stamell ¶ 8 & Ex. C.) The FDIC opposes any award of interest.

## II. DISCUSSION

### A. Interest Accruing Post–Receivership

■ "The FDIC, as receiver, is [required] to distribute the assets of a failed bank to all creditors on a pro rata basis pursuant to the National Bank Act at 12 U.S.C. §§ 91 and 194, and [the Financial Institutions Reform, Recovery and Enforcement Act ("FIRREA")] at 12 U.S.C. § 1821(i)(2)." *Adams v. Zimmerman*, 73 F.3d 1164, 1171 (1st Cir. 1996) (citation omitted); *see also United States ex rel. White v. Knox*, 111 U.S. 784, 786, 4 S.Ct. 686, 28 L.Ed. 603 (1884) ("Dividends are to be paid to all creditors ratably; that is to say, proportionally. To be proportionate they must be made by some uniform rule.... All creditors are to be treated alike."). Moreover, pro rata distribution is made "upon the amount of each claim as of the date of insolvency." *Ticonic Nat'l Bank v. Sprague*, 303 U.S. 406, 411, 58 S.Ct. 612, 82 L.Ed. 926 (1938) (citing *Knox*, 111 U.S. 784).

Courts have expressed a number of purposes for the ratable distribution rule. The rule is in effect "to avoid prejudice from the inevitable delay of court proceedings for liquidation; to facilitate administration; [and] because on [the] date [of insolvency] the creditors acquire a right in rem against the assets in the hands of the receiver." *Id.* (citations omitted). And while there are exceptions to the rule, "the statutory framework is distinctly unfriendly to the recognition of special interests or preferred claims." *Adams*, 73 F.3d at 1172 (citation omitted) (internal quotation marks omitted).

■ Accordingly, in order to ensure equality among creditors as of the date of insolvency, interest accruing after the date of insolvency is generally not recoverable. *Ticonic*, 303 U.S. at 411; *see Adams*, 73 F.3d at 1175; *Citizens State Bank of Lometa v. FDIC*, 946 F.2d 408, 416 (5th Cir.1991).

However, in understanding this general rule against interest, it is critical to remember that it is the underlying purpose of equal treatment of creditors that drives the rule. Therefore, "interest is proper where the ideal of equality is served, and so a creditor whose claim has been erroneously disallowed is entitled on its allowance to interest on his dividends from the time a ratable amount was paid other creditors." *Ticonic*, 303 U.S. at 411; *see First Empire Bank–N.Y. v. FDIC*, 634 F.2d 1222, 1224 (9th Cir.1980) ("[W]hile interest, after insolvency of the bank, cannot be included in the claim against the bank, it is proper to allow interest upon an erroneously disallowed claim from the date a ratable amount was paid to other creditors."); *see also Burnett Plaza Assocs. v. NCNB Tex. Nat'l Bank*, No. 3:89–CV–1290–X, 1994 U.S. Dist. LEXIS 7781, at *70 (N.D.Tex. May 12, 1994) (awarding pre-judgment interest beginning from the date that other creditors received payments on the ground that: "Although creditors generally are not entitled to post-insolvency interest in bank receivership proceedings, they are entitled to prejudgment interest from the date their claims should have been paid.") (citation omitted).

The FDIC contends that Plaintiffs are not entitled to an award of post-receivership interest because such an award would violate the rule of ratable distribution. (FDIC's Opposition Mem. at 4–7.) The FDIC seeks to distinguish *Ticonic* and *First Empire* by arguing that in those cases the party seeking interest was a secured, as opposed to unsecured creditor, and thus entitled to preferential treatment, or that there were adequate funds to pay 100% of the claims of all creditors so that an interest award to some creditors would not deny other creditors' recovery of principal. The FDIC argues that, in contrast, awarding interest to Plaintiffs while other claimants are still owed on the principal portion of their claims would result in unequal treatment. (FDIC's Surreply at 2–4.) The FDIC has it backwards. No creditor will be denied their ratable distribution as a result of an award of interest from the time, and to the extent, that the FDIC has made ratable distributions. The FDIC has

paid all other approved unsecured creditors 95.56% of the principal portion of their claims. In other words, everyone except Plaintiffs has been paid approximately 96 cents on the dollar. The FDIC has paid out this amount over the last 5 years, which means that these creditors have had years of use of this money. For these same years, the FDIC has denied Plaintiffs' claims, preventing Plaintiffs from using or investing their money. If Plaintiffs only now receive dividends worth 95.56% of the principal amount they were damaged, then it is Plaintiffs who will be treated unfairly. Thus, and as the *Ticonic* Court held, equality is served, not thwarted, by awarding interest from the time other claimants receive ratable distributions. *See Ticonic,* 303 U.S. at 411.

The FDIC has also argued that *First Empire* has been overruled by the passage of FIRREA and the enactment of 12 U.S.C. 1821(i). (FDIC's Surreply at 4.) While the *First Empire* decision may have been superseded *in part* by statute; *see Branch v. FDIC,* 825 F.Supp. 384, 414 (D.Mass.1993); *Lawson v. Fleet Bank of Maine,* 807 F.Supp. 136, 143 (D.Maine 1992), *aff'd,* 3 F.3d 11 (1st Cir.1993);[1] nothing has undercut the compelling logic of *Ticonic's* and *First Empire's* holdings: when a receiver is required to make ratable distributions, equality among unsecured creditors, which is the fundamental purpose of the ratable distribution system, is furthered by awarding post-insolvency interest from the time, and to the extent, that other unsecured creditors have received payments.[2] The Court holds, therefore, that the ratable distribution rule does not bar Plaintiffs' recovery of post-insolvency interest from the time and to the extent that the

FDIC made ratable distributions to other unsecured creditors.

### B. Pre-judgment Interest

#### 1. *New Jersey R. 4:42–11(b) Applies*

Generally, a federal district court sitting in diversity jurisdiction should apply state law with respect to pre-judgment interest. *Salas by Salas v. Wang,* 846 F.2d 897, 909 n. 13 (3d Cir.1988); *Jarvis v. Johnson,* 668 F.2d 740, 746–47 (3d Cir.1982). New Jersey's Rule regarding pre-judgment interest in tort actions provides:

> Except where provided by statute with respect to a public entity or employee, and except as otherwise provided by law, the court shall, in tort actions, including products liability actions, include in the judgment simple interest, calculated as hereafter provided, from the date of the institution of the action or from a date 6 months after the date the cause of action arises, whichever is later, provided that in exceptional cases the court may suspend the running of such prejudgment interest.

R. 4:42–11(b).[3]

The FDIC's argument to avoid the requirements of New Jersey law to pay pre-judgment interest is tortuous at best. The FDIC first cites to R. 4:42–11(a), stating that this rule permits pre-judgment interest only for judgments for the payment of money. The FDIC further postulates that Plaintiffs were not awarded a judgment for the payment of money. Rather, the judgment approved Plaintiffs' claims submitted to the FDIC. In satisfaction of these claims, the

---

1. In fact, the FDIC seems to have previously recognized that *First Empire* has not been overruled in its entirety. In *Chemical Bank v. FDIC,* No. Civ. A. 94–2799, 1996 WL 680137, at *3 (E.D.Pa. Nov.19, 1996), a case in which the FDIC was appointed as receiver for a failed bank in late 1992 or early 1993, Judge Giles noted that the FDIC cited *First Empire* as support for one of its positions.

2. It is noteworthy that while the FDIC has argued against the applicability of *Ticonic* and *First Empire,* it has failed to identify, and the Court is unaware of, a single case either before or after the enactment of FIRREA, in which all post-insolvency interest was denied as violative

of the ratable distribution rule despite the fact that the receiver had already made ratable distributions to all other approved claimants.

3. Although pre-judgment interest is provided by New Jersey Supreme Court Rule rather than by statute, under the *Erie* doctrine, New Jersey's Rule still governs because it has a "clear and undeniable effect on the monetary outcome of a suit" in that it "results in increasing amount of damages a plaintiff can receive and a defendant must pay, over the amount of damages that would be awarded in the absence of the Rule." *Jarvis,* 668 F.2d at 745 (discussing Pennsylvania's pre-judgment interest rule).

FDIC must issue Receiver's Certificates, which are a form of dividends. Since the issuance of a Receiver's Certificate is not the payment of money, the FDIC concludes that New Jersey's pre-judgment interest Rule is inapplicable. (FDIC's Opposition Mem. at 9–11.)

The FDIC's argument is specious. The FDIC relies solely on R. 4:42–11(a) as authority for its claim that interest is permitted only on money judgments. (*Id.* at 9.) Subsection (a) provides:

> *Post Judgment Interest.* Except as otherwise ordered by the court or provided by law, judgments, awards and orders *for the payment of money,* taxed costs and counsel fees shall bear simple interest as follows....

R. 4:42–11(a) (emphasis added). As is clear from the face of the Rule, subsection (a) applies to post-judgment interest. Subsection (b), however, which provides for pre-judgment interest, states that "the court shall, in tort actions, ... include in the judgment simple interest." R. 4:42–11(b).

Furthermore, the Court flatly rejects the FDIC's argument that Plaintiffs have not received a money judgment. Plaintiffs sued Howard for money damages on the state law theories of fraud and negligent misrepresentation. The jury found that Howard committed the tort of negligent misrepresentation and gave Plaintiffs a money award, which, after certain set offs and deductions, totals $1,532,575.41. Clearly Plaintiffs have received a judgment for the payment of money. While the FDIC has stepped in as receiver for Howard, and may satisfy the money judgment with Receiver's Certificates, which are the statutorily approved mechanism for paying the money judgment, the nature of the judgment has not changed. *See Franklin Bank v. FDIC,* 850 F.Supp. 845, 848–49 (N.D.Cal.1994); *Midlantic Nat'l Bank/North v. Federal Reserve Bank of N.Y.,* 814 F.Supp. 1195, 1196–97 (S.D.N.Y.1993). Thus, the Court concludes that Plaintiffs are entitled to pre-judgment interest pursuant to R. 4:42–11(b).

### 2. *When Does Interest Begin to Accrue?*

■ Plaintiffs next argue that since the FDIC has invoked federal law to limit the Plaintiffs' right to recover post-insolvency interest, the Court should provide pre-judgment interest from the time the cause of action accrued, as is consistent with federal case law, rather than from the time of the filing of the action, as required by the New Jersey Rule. (Plaintiffs' Reply Mem. at 7–9.) As previously stated, however, since Plaintiffs' judgment is based on a state cause of action, state pre-judgment interest rules apply. *Salas by Salas,* 846 F.2d at 909 n. 13; *Jarvis v. Johnson,* 668 F.2d at 746–47. That federal law bars a portion of Plaintiffs' interest award does not change the fact that it is state law that creates Plaintiffs' right to pre-judgment interest. *See Burnett Plaza,* 1994 U.S. Dist. LEXIS 7781, at *70–71 (applying Texas law on pre-judgment interest law despite holding that in bank receivership proceedings the plaintiff could only recover pre-judgment interest beginning from the time other creditors received payments). Thus, New Jersey's rule regarding the date pre-judgment interest begins to accrue must govern.

### 3. *Exceptional Circumstances*

■ This Court is empowered, "in exceptional cases, ... [to] suspend the running of ... pre-judgment interest." R. 4:42–11(b).Relying on this provision, the FDIC requests that the Court exercise its discretion and decline to award any pre-judgment interest. (FDIC's Opposition Mem. at 11–12.) It argues that such a discretionary decision is warranted since an award of interest, while other creditors are still owed on their principal claims,would constitute an "unfair windfall." (*Id.* at 12.)

The Court disagrees and declines to suspend the running of pre-judgment interest. "[E]xceptional circumstances exist ' "only where it is demonstrated that the policy, spirit and intent of the rule are patently inapposite to the circumstances at hand." ' " *Salas by Salas,* 846 F.2d at 909–10 (applying R. 4:42–11(a)) (quoting *Ruff v. Weintraub,* 105 N.J. 233, 245, 519 A.2d 1384 (1987) (quoting *Kotzian v. Barr,* 152 N.J.Super. 561, 565,

378 A.2d 256 (App.Div.1977), *rev'd on other grounds,* 81 N.J. 360, 408 A.2d 131 (1979))). The policies that underlie the pre-judgment interest rule are "to compensate the plaintiff for the loss of income that would have been earned on the judgment had it been paid earlier" and "to discourage defendants' delay by induc[ing] prompt defense consideration of settlement possibilities." *Id.* at 910 (citations omitted) (internal quotation marks omitted) (change in original). As previously explained, without an award of pre-judgment interest, Plaintiffs would be in a less favorable position than other creditors who have had years of use of their ratable distributions. To deny interest to Plaintiffs would thus be in violation of the policies behind the ratable distribution requirement of FIRREA and New Jersey's pre-judgment interest rule. Accordingly, the Court declines to deny pre-judgment interest.

#### C. Post-judgment Interest.

■ Although state law provides for Plaintiffs' right to prejudgment interest, federal law, specifically 28 U.S.C. § 1961, provides for post-judgment interest. *FDIC v. Fidelity and Deposit Co. of Md.,* 827 F.Supp. 385, 388 & n. 8 (M.D.La.1993), *aff'd,* 45 F.3d 969 (5th Cir.1995); *see Nissho–Iwai Co., Ltd. v. Occidental Crude Sales, Inc.,* 848 F.2d 613, 622 (5th Cir.1988) ("We agree with the eighth, tenth and eleventh circuits which have expressly held that the amended federal postjudgment interest statute applies in diversity cases.") (citations omitted). Post-judgment interest "properly runs from the date of the entry of judgment." *Kaiser Aluminum & Chem. Corp. v. Bonjorno,* 494 U.S. 827, 835, 110 S.Ct. 1570, 108 L.Ed.2d 842 (1990). To avoid violating the ratable distribution rule, post-judgment interest is available to the extent that other claimants have previously received ratable distributions. As of October 27, 1997, the FDIC has paid 95.56% of all approved claims. Therefore, assuming that no other ratable distributions are made by the date of entry of judgment, Plaintiffs are awarded 95.56% of post-judgment interest available under 28 U.S.C. § 1961.

#### III. CONCLUSION

For the reasons set forth above, the Court concludes that: (1) Plaintiffs are entitled to full pre-judgment interest from June 10, 1991, the date Plaintiffs' suit was filed, through October 2, 1992, the date the FDIC was appointed receiver of Howard; (2) after October 2, 1992, Plaintiffs are entitled to pre-judgment interest from the time, and to the extent, that a ratable distribution was paid to other creditors of Howard; (3) pre-judgment interest is to be calculated pursuant to New Jersey's R. 4:42–11(b); and (4) Plaintiffs are entitled to post-judgment interest, calculated pursuant to 28 U.S.C. § 1961, to the extent that a ratable distribution has been paid to other creditors. An appropriate Order follows.