**WATERVIEW MANAGEMENT COMPANY, et al.,**
**Plaintiffs,**

v.

**FEDERAL DEPOSIT INSURANCE CORPORATION, As Successor To Resolution Trust Corporation, Defendant.**

**No. CIV.A. 94–1930(JR).**

United States District Court, District of Columbia.

March 31, 2003.

James T. Lewis, James T. Lewis, P.C., McLean, VA, Counsel for Plaintiffs.

William A. Dyess, Federal Deposit Insurance Corporation, Washington, D.C., Counsel for Defendant.

### MEMORANDUM ORDER

ROBERTSON, District Judge.

After the remand of this case from the Court of Appeals, *see Waterview Manage-* *ment Co. v. FDIC*, No. 96–5110, 105 F.3d 696, decided January 31, 1997, a jury awarded Waterview Management Company damages of $2,500,000 as compensation for the "actual direct compensatory damages" it suffered when the Resolution Trust Corporation repudiated its exclusive option to market and purchase the "HomeFed tract" in Prince Georges County, Maryland. The judgment entered upon that verdict, for $3,235,892.56, included prejudgment interest.

After the verdict was returned, but before the entry of judgment, counsel for FDIC let the Court know that the judgment would be paid, not in cash, but with "receiver's certificates." Two such certificates were eventually issued, one for $2,500,000, and the other for $735,892.56, the amount of prejudgment interest. The FDIC explains: "Separate certificates were necessary since the priority of the two recoveries differed under 12 C.F.R. § 360.3. The claim for damages was a priority six claim, while the claim for prejudgment interest constituted a priority seven claim." FDIC Response Memorandum at 5 & n. 1. FDIC redeemed the $2,500,000 certificate for $1,798,000, an amount that was 71.92 percent of the damage award; it paid nothing on the certificate that represented prejudgment interest. FDIC explains: "This is the percentage recovery that has been paid to all other priority six claimants in the FSB receivership. It is unlikely that there will be any further payment on these claims. It is even more unlikely that there will be any payment at all on priority seven claims." *Id.* at 5.

Both sides appealed from the judgment entered after the jury's verdict. Neither side asked for appellate review of FDIC's announced intent to pay the judgment with certificates. FDIC did not appeal the award of prejudgment interest. The

FDIC dismissed its appeal on January 15, 1999. On May 20, 1999, the Court of Appeals rejected Waterview's appeal and affirmed the judgment.

More than two years later, on September 19, 2001, Waterview moved in this Court for an order holding the defendants in contempt, mandating full payment of the damage and prejudgment interest award, and awarding post-judgment interest. I denied the contempt motion but called for oral argument and further briefing on three questions: First, what authority, other than 12 C.F.R. § 360.3, permitted the FDIC to decline to pay at least 71.92 percent of the prejudgment interest award? Second, since the RTC had already determined that the creditors of HomeFed Bank would receive only 71.92 percent of the face value of their claims when the case went to the jury, was it error to instruct the jury that the plaintiff's "actual direct compensatory damages" would be the difference between the fair market value of the waterfront parcel and the contract price plaintiffs would have had to pay for that parcel? And, third, why should the FDIC not be required to pay post-judgment interest at the rate established by statute? I heard oral argument on those questions and then asked for further submissions on two subjects: first, the basis for the FDIC's position that the regulations promulgated under the Homeowner's Loan Act of 1933 continue to govern receiverships chartered by the Federal Home Loan Bank Board (FHLBB); and second, the manner in which the assets of HomeFed Bank F.S.B. were held between the time it was placed in receivership and the date of the judgment in this case, and the treatment of income received from those assets, including interest accrued.

### 1. *Prejudgment interest.*

FDIC regulations provide for the payment of unsecured claims against receivers according to defined and prioritized categories. 12 C.F.R. § 360.3. Waterview's damage award, according to the FDIC, falls within priority six, "[c]laims for withdrawable accounts, including those of the Corporation as subrogee or transferee, and all other claims which have accrued and become unconditionally fixed on or before the date of default, whether liquidated or unliquidated, except as provided [in the five higher priorities] ...." 12 C.F.R. § 360.3(a)(6). Priority six fits, says the FDIC, because the damage award to Waterview was for repudiation of a contract, and because 12 U.S.C. § 1821(e)(3)(A) provides that damages arising out of the repudiation of contracts are to be determined as of the date of the appointment of the receiver, which is also the "date of default" as used in the language establishing priority six. *See* 12 U.S.C. § 1813(x)(1). The claim for prejudgment interest belongs in priority seven, FDIC asserts, because it is a claim for interest accrued *after* the date of default on priority six claims and thus is a "claim[ ] other than those that have accrued and become unconditionally fixed on or before the date of default, including claims for interest after the date of default on claims under paragraph (a)(6) of this section." 12 C.F.R. § 360.3(a)(7).

■ There is no statutory requirement that claims be prioritized at all, or that they be assigned priorities in the specific way that the regulations have done. The statutory limitation of damages in repudiation cases to "actual direct compensatory damages," 12 U.S.C. § 1821(e)(3)(A)(i) cannot be read to exclude prejudgment interest. Punitive or exemplary damages, damages for loss profits or opportunity, and damages for pain and suffering are expressly excluded by statute, § 1821(e)(3)(B), but not prejudgment interest. So, the question is, what autho-

rizes FDIC to refuse to pay pre-judgment interest?[1]

FDIC's rationale for its position is the "ratable distribution" rule established by 12 U.S.C. § 1821(i)(2), which limits FDIC's liability to any person having a claim against the receiver to the "amount such claimant would have received if the Corporation had liquidated the assets and liabilities of such institution without exercising the Corporation's authority under subsection (n) of this section or section 1823 of this title." This provision has been interpreted by the Sixth Circuit, in *RTC v. Cheshire Mgmt. Co., Inc.*, 18 F.3d 330, 336 (1994), as prohibiting any general creditor from receiving more than its pro rata share of receivership assets. If Waterview were to receive prejudgment interest, FDIC's argument runs, it would be receiving a preferential payment, *i.e.*, more than its pro rata share.

In another memorandum filed post-trial, however, FDIC concedes that there are exceptions to its ratable distribution rule. One is where the assets of the receivership are sufficient to pay all provable claims in full (apparently not the case

here). Another is "where the receiver is shown to be unreasonable or otherwise at fault in denying the claim." Def.'s Objection to Assessment of Prejudgment Interest at 4. That one does appear to be applicable. The only reason this suit had to be filed in the first place was that RTC (FDIC's predecessor) took the position, which the Court of Appeals found "quite astonishing," that it could simply "preempt" out of existence HomeFed Bank's pre-receivership contractual obligations. That position may not have been "fault" in any tortious sense, but it required Waterview—unreasonably, as it turned out—first to litigate its entitlement to any recovery at all, then to take an appeal in order to vindicate its right to a trial, and then to try the case to a jury. It is not necessary to find that FDIC's litigation position was unreasonable, however, to rule in Waterview's favor here. Prejudgment interest is not a penalty.

Nor does prejudgment interest increase the recovery of a successful claimant. It is routinely awarded, when a statute is silent on the matter,[2] *Motion Pic-*

---

1. And by what authority did FDIC decide, essentially without explanation, to change an important provision of the original priority regulation, issued by the Federal Home Loan Bank Board on July 5, 1988, 53 Fed.Reg. 25129? The original regulation contained a § 569c.11(c): "If the rejection or repudiation of an unexpired lease or executory contract by the receiver *gives rise to a claim for damages, such claims* [sic], *if allowed, shall be classified as a claim that has accrued and become unconditionally fixed on or before the date of default,* and not as an administrative expense of the receiver." (Emphasis added). The comments accompanying that rule, 53 Fed.Reg. at 25131, explained: "Section 569c.11(c) makes it clear that any claim arising from the rejection or repudiation of an executory contract or an unexpired lease would constitute a general unsecured claim deemed to have arisen on or before the date of default."

Subsection (c) was removed on November 5, 1990, 55 Fed.Reg. at 46496. The only explanation given for its removal was a notice stating that "[a]ll of the regulations being removed are in conflict with, or redundant with, statutory law or FDIC regulations, or are unnecessary. Therefore, a notice of proposed rulemaking and ensuing comment period is not required." The asserted "conflict" is unexplained, either in the Federal Register or in the briefs of FDIC in this case. *See* 55 Fed.Reg. at 46495.

2. In *Battista v. Federal Deposit Insurance Corporation*, 195 F.3d 1113, 1120–21 (1999), the Ninth Circuit found prejudgment interest not available against the FDIC because Congress has not expressly waived FDIC's immunity. The FDIC has not advanced that argument in this case, however, and appears to concede that prejudgment interest would be paid if there were money enough to do so.

*ture Ass'n of America, Inc. v. Oman,* 969 F.2d 1154, 1157 (D.C.Cir.1992), because "interest compensates for the time value of money, and thus is often necessary for full compensation." *Id. See also Oldham v. Korean Air Lines Co.,* 127 F.3d 43, 53 (D.C.Cir.1997). Waterview was entitled to its "actual direct compensatory damages" at the time of the appointment of the receiver. To deny prejudgment interest would be to reduce Waterview's recovery by the time value of money; it would penalize Waterview for FDIC's "quite astonishing" resistance to its claim, and, in effect, give preference to other claimants whose claims were paid without the need to litigate. As another district court has found, FDIC's application of its "ratable distribution" rule to prejudgment interest "has it backwards." *Condus v. Howard Savings Bank,* 999 F.Supp. 594, 596 (D.N.J.1998). In *Condus,* the court explained:

> [E]veryone except Plaintiffs has been paid approximately 96 cents on the dollar. The FDIC has paid out this amount over the last 5 years, which means that these creditors have had years of use of this money. For these same years, the FDIC has denied Plaintiffs' claims, preventing Plaintiffs from using or investing their money. If Plaintiffs only now receive dividends worth 95.56% of the principal amount they were damaged, then it is Plaintiffs who will be treated unfairly.

*Id.* at 597. FDIC's claim-prioritizing regulation has been given appropriate deference under the rule of *Skidmore v. Swift & Co.,* 323 U.S. 134, 65 S.Ct. 161, 89 L.Ed. 124 (1944), but that regulation cannot and does not supersede a judgment awarding prejudgment interest.

The FDIC has been unresponsive to this Court's pointed efforts to obtain a clear explanation of its management of money and its accounting practices.[3] Even if the only source of funds to pay prejudgment interest is the assets of HomeFed Bank F.S.B., however, it appears from the statement of assets and liabilities appended to Waterview's motion (Exhibit 4) that substantial amounts remain available to pay the prejudgment interest award, and FDIC does not contend otherwise.

■ FDIC's argument that Waterview waived its objection to the FDIC's classification of prejudgment interest as a priority seven claim by failing to raise the matter on appeal is rejected. FDIC never objected to the award of prejudgment interest or foreclosed the possibility of plaintiff's recovering it.

### 2. *Jury instructions.*

■ FDIC's ratable distribution argument does prevail on the question of whether it was proper to instruct the jury on the computation of "actual direct compensatory damages" without telling the jury that only 71.92 percent (or some percent) of that amount would actually be paid. The statute required that Waterview's damages be calculated as of the actual date of the contract repudiation—or the appointment of the receiver. To compute it later, using knowledge of the percentage recovery, would indeed have granted a preference to this plaintiff. Or, as FDIC argues, plaintiff's theory would require that the jury "abandon its function

---

**3.** In the most recent round of briefing, FDIC was asked to explain (i) how the assets of the HomeFed Bank F.S.B. receivership were held; (ii) whether interest was accrued on those assets; and (iii) who had the benefit of income from receivership assets and the time value of money. FDIC's Brief of 9/5/02 offers minimal responses to the first two elements of that question and none to the last.

of finding damages, and instead determine the amount of recovery."

3. *Post-judgment interest.*

FDIC is correct that post-judgment interest need not be separately ordered. It accrues automatically by operation of 28 U.S.C. § 1961. FDIC's only objection to paying post-judgment interest rests on its assertion that post-judgment is "priority seven" and that there is no money in the receivership to pay priority seven claims. As with prejudgment interest, however, FDIC has not established that a "preference" is granted by the payment of a sum that represents only the time value of money.

\*    \*    \*    \*    \*    \*

Waterview's motion for pre- and post-judgment interest will accordingly be **granted**. FDIC must pay prejudgment interest from the date judgment was entered in this case until the date of its redemption of the receiver's certificates. The amount of prejudgment interest will be $529,253.90 (71.92 percent of the $735,892.56 originally awarded). Post-judgment interest will run on the $1,798,000 value of the receiver's certificates as provided by 28 U.S.C. § 1961 from the date judgment was entered until the date the certificates were redeemed, and on the prejudgment interest award from the date judgment was entered until the date it is paid.