

**2005 Decisions**

**Opinions of the United States Court of Appeals for the Third Circuit**

5-18-2005

# Mandile v. Clark Material

Precedential or Non-Precedential: Non-Precedential

Docket No. 04-2743

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2005

Recommended Citation

"Mandile v. Clark Material" (2005). *2005 Decisions.* Paper 1164.
http://digitalcommons.law.villanova.edu/thirdcircuit_2005/1164

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova University School of Law Digital Repository. It has been accepted for inclusion in 2005 Decisions by an authorized administrator of Villanova University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS FOR THE THIRD CIRCUIT

———

No. 04-2743

———

MICHAEL MANDILE, Individually;
MICHAEL MANDILE, Administrator of the
Estate of MARIA MANDILE,
<u>Appellant</u>

v.

CLARK MATERIAL HANDLING COMPANY;
JOHN DOE, I-X, said names being
fictitious, representing any and all
subsidiaries of CLARK and/or CLARK
EQUIPMENT COMPANY, INDUSTRIAL TRUCK
DIVISION and/or CLARK EQUIPMENT
COMPANY and/or any and all entities
which were involved in the manufacture
and/or design of the manufacture and/or
design of the "tug" which made contact
with Michael Mandile on August 25, 1996,
including any successor corporations to
any of the aforesaid entities;
RICHARD ROE I-X, said names being
fictitious, representing any "product
seller" as defined by N.J.S. 2A:58C-8
and/or successor corporation, relative
to the distribution, sale, lease, etc.
of the "tug" which made contact with
Michael Mandile on August 25, 1996;
TEREX MATERIAL HANDLING CORP

———

On Appeal from the United States District Court
for the District of New Jersey
(D.C. No. 02-cv-03285)
District Judge: Honorable William G. Bassler

Submitted Under Third Circuit LAR 34.1(a)
May 9, 2005

Before: SLOVITER and FISHER, Circuit Judges, and
POLLAK, District Judge[*]

(Filed May 18, 2005)

OPINION

SLOVITER, Circuit Judge.

Michael Mandile, who was the plaintiff in the products liability case before us, appeals from the order of the District Court granting the defendant Clark Material Handling Company's post-verdict motion for judgment as a matter of law. We must apply New Jersey law in this diversity action.[1] For the reasons set forth below, we will affirm.

**I.**

Because the parties are familiar with the factual and procedural background of this case, we refer only to those facts that are pertinent to our disposition. Clark Material

---

[*] Hon. Louis H. Pollak, Senior Judge, United States District Court for the Eastern District of Pennsylvania, sitting by designation.

[1] The District Court had jurisdiction under 28 U.S.C. § 1332; this court has jurisdiction pursuant to 28 U.S.C. § 1291.

2

Handling Company ("Clark")[2] produced the tow tractor at issue here. In 1986, First

Aviation Services, Inc. ("First Aviation") purchased the vehicle. Ten years later, in 1996,

Mandile, an employee of First Aviation, was injured in the course of his work when he

was struck by a cart being towed by the tow tractor. At the time of the accident, the tow

tractor was being driven in reverse.

At the trial, Mandile claimed that the tow tractor was defectively designed because

it did not utilize rear-view mirrors, pedestrian-signaling alarms, or any similar safety

device. Mandile also asserted that Clark had breached its post-sale duty to warn because

it had failed to inform First Aviation about advances in tow tractor signaling devices and

similar safety products that were purportedly developed and standardized after the 1986

sale.

The evidence presented at trial showed that in the early 1980s, Clark had convened

an internal task force, which it called the Pedestrian Accident Task Force ("PATF"), to

research pedestrian accidents involving its vehicles and to generate possible solutions to

this problem. A series of internal Clark memoranda demonstrates that the PATF

considered the use of audible alarms, mirrors, and strobe lights on its machines. At the

---

[2] Clark manufactured tow tractors, fork lifts, and similar
vehicles; these vehicles are primarily used in industrial settings
and at airports. Some time after 1986, Clark declared
bankruptcy and Terex Material Handling Corporation was
named as defendant and defended this action on behalf of Clark.
For simplicity and parallelism with the District Court's opinion,
we will refer to the Appellees/Defendants as "Clark."

conclusion of several years of study, however, the PATF could not identify the root cause

of pedestrian accidents; it also concluded that the environments in which its customers

used its products varied widely, thereby making any uniform safety solution untenable.

As a result, it determined that mirrors and pedestrian warning devices should remain

optional for the end-user of Clark's vehicles.[3]  Thus, Clark did not include any of the

considered devices on the tow truck at issue.

Mandile's case was tried to a jury.  At the close of his evidence, Clark, pursuant to

Fed. R. Civ. P. 50(a), moved for judgment as a matter of law ("JMOL"), but the District

Court reserved its ruling on the motion and permitted the matter to proceed.  Eventually,

the jury rejected Mandile's design defect claim but awarded him damages of $550,000 for

his post-sale failure to warn claim.[4]

After the jury returned its verdict, Clark renewed its motion for JMOL.  See Fed.

R. Civ. P. 50(b).  The District Court found that there was insufficient evidence in the

record--even when viewed in the light most favorable to Mandile–from which a

reasonable jury could have found Clark liable on the failure to warn claim and thus

---

[3]Notably, neither the United States Occupational Safety and Health Administration ("OSHA") nor the American National Standards Institute ("ANSI") now requires or has ever required manufacturers to include back-up alarms, signaling devices, or mirrors on powered industrial trucks of the type here at issue.

[4] The jury further awarded $100,000 to the estate of Mandile's wife for the loss of consortium occasioned by Clark's failure to warn.

4

granted Clark's motion for JMOL. App. at 19.[5]   This timely appeal followed.

## II.

This court reviews <u>de novo</u> a district court's decision regarding a motion for JMOL and applies the same standard as the district court. Thus, we must determine whether, when the evidence is viewed in the light most favorable to the nonmoving party, there is sufficient evidence from which a jury reasonably could have found liability. <u>See</u> Fed. R. Civ. P. 50; <u>Lightning Lube, Inc. v. Witco Corp.</u>, 4 F.3d 1153, 1166 (3d Cir. 1993).

Under New Jersey law, a post-sale failure to warn cause of action is different from a defective design claim. The New Jersey statute regarding manufacturers' duty to warn, <u>see</u> N.J. Stat. Ann. § 2A:58C-4,[6] unlike the New Jersey statute pertaining to design

---

[5] Clark also moved, in the alternative, for a new trial pursuant to Fed. R. Civ. P. 59(a). The District Court conditionally granted Clark's motion for a new trial in the event that the JMOL in favor of Clark was vacated or reversed. Because we will affirm the District Court's resolution of Clark's motion for JMOL, we need not address its conditional grant of a new trial.

[6] That statute provides in pertinent part:

In any product liability action the manufacturer or seller shall not be liable for harm caused by a failure to warn if the product contains an adequate warning or instruction <u>or, in the case of dangers a manufacturer or seller discovers or reasonably should discover after the product leaves its control, if the manufacturer or seller provides an adequate warning or instruction.</u>

defects, <u>see</u> N.J. Stat. Ann. § 2A:58C-3, "establishes no state-of-the-art defense limiting a manufacturer's liability to what it knew or should have known at the time of manufacture. Rather, it requires the manufacturer to warn of dangers it discovers or reasonably should discover after the product leaves its control." <u>Dixon v. Jacobson Mfg. Co.</u>, 637 A.2d 915, 922 (N.J. Super. Ct. App. Div. 1994); <u>see also</u> <u>Feldman v. Lederle Labs.</u>, 479 A.2d 374, 388-89 (N.J. 1984) ("[S]ubsequently acquired knowledge, both actual and constructive, also may obligate the manufacturer to take reasonable steps to notify purchasers and consumers of the newly-discovered danger."); <u>Seeley v. Cincinnati Shaper Co., Ltd.</u>, 606 A.2d 378, 384-85 (N.J. Super. Ct. App. Div. 1992).

Stated otherwise, if a product is not defective at the time of its sale, N.J. Stat. Ann. § 2A:58C-3, pertaining to design defects, does not require the manufacturer "to upgrade [an old model] to incorporate [a] safer . . . design adopted [later]." <u>Dixon</u>, 637 A.2d at 922. In contrast, under N.J. Stat. Ann. § 2A:58C-4, pertaining to the duty to warn, "a manufacturer enjoys no such immunity, and has a continuing duty to warn of dangers discovered even after a product leaves its control." <u>Id.</u>; <u>see also</u> <u>Seeley</u>, 606 A.2d at 384. As noted by a federal court applying New Jersey law: "The crucial distinction between the two [design defect and failure to warn] is that a manufacturer has no duty to correct a physical design that was considered state of the art at the time of its manufacture, whereas it does have a duty to warn of dangers in its product exposed by advances in the state of

N.J. Stat. Ann. § 2A:58C-4 (emphasis added).

6

the art." Straley v. United States, 887 F. Supp. 728, 748 (D. N.J. 1995).

In rejecting Mandile's design defect claim, the jury found that Clark had not put a defective tow tractor into the stream of commerce.[7]  Nonetheless, in ruling in Mandile's favor on his failure to warn claim, the jury found that the same tow tractor, ten years after its sale, was known to be dangerous in a way it had not been ten years earlier and that Clark consequently had a duty to warn consumers.   The District Court, however, in granting Clark's motion for JMOL, found that Mandile had not presented any evidence showing that Clark had discovered or reasonably should have discovered a danger subsequent to the 1986 sale.  The Court further stated that it was not aware "of any New Jersey law that, absent a newly discovered danger, imposes on a manufacturer the duty to warn or advise end users of updates or post-sale advances in technology regarding a physical design that the jury found had no design defect." App. at 28.

On appeal, Mandile argues that he did in fact present evidence of "newly-discovered dangers," Feldman, 479 A.2d at 389, sufficient to support the jury's finding of a post-sale duty to warn.  Indeed, he argues that he did so in three ways.  Mandile asserts that:  (1) the post-sale duty was triggered by post-1986 feasibility of alarm standardization; (2) the post-sale duty was triggered by Clark's failure to inform First Aviation of subsequently developed, optional alarm systems; and (3) the post-sale duty was triggered by advances in alarm technology.  Upon our de novo review, we find that

---

[7] Mandile has not appealed or cross-appealed this determination.

none of these proposed bases is sufficient to support the jury's verdict.

Mandile first argues that subsequent to 1986 it became feasible to standardize alarms and that Clark's failure to warn consumers of this development violated its duty under New Jersey law. Mandile points to various PATF documents and memoranda in an effort to show that the group determined, post-1986, that alarm standardization was feasible. As noted by the District Court, however, such documents simply do not support a finding that PATF concluded after 1986 that alarm standardization was feasible for Clark. Mandile also relies on testimony regarding the Nissan Motor Company's post-1986 use of standardized alarms on fork lifts and United Airlines' use of standardized back-up alarms on powered industrial trucks to show that standardized alarms are feasible. However, Mandile presented no evidence to show how these other manufacturers' standardization of alarms on different products used in different environments demonstrates, or even suggests, that a standardized alarm system became feasible after 1986 for the type of tow tractor that injured Mandile.

Finally, it is undisputed that Clark--in conformance with OSHA and ANSI standards--never standardized alarm systems or offered such alarms as standard (as opposed to optional) equipment either before or after 1986. We thus agree with the District Court's decision that the purported developments regarding alarm standardization did not constitute a newly-discovered danger sufficient to trigger in Clark a post-sale duty to warn.

8

Second, Mandile argues that Clark had a post-sale duty to inform its end users of the availability of subsequently developed optional alarm systems. Mandile asserts that Clark issued various brochures and guides after 1986 apprising customers of these newly developed alarms; he contends, however, that Clark failed to provide such documents to First Aviation and thereby breached its duty to warn.

However, Clark's failure to advise First Aviation about this optional equipment did not violate the post-sale duty to warn. Rather, the very fact that such equipment was optional means that Clark's purported failure to issue a post-sale warning to First Aviation regarding such equipment cannot run afoul of its duty to warn.[8] The duty to warn is based on the premise that a product is defective absent an adequate warning. Dixon, 637 A.2d at 922. Therefore, if the tow tractor was unsafe absent such "optional" equipment, the equipment would be required, not optional. In this case, however, in ruling in Clark's favor on the design defect claim, the jury rejected Mandile's contention that Clark's failure to include such alarms on the tow tractor rendered it defective. Therefore, because the tow tractor was not defective absent the optional equipment, the District Court was correct in concluding that Clark had no duty to warn customers about the optional availability of such equipment.

---

[8] Furthermore, as noted by the District Court, the record is unclear as to whether Clark actually failed to inform First Aviation about the optional safety equipment.

9

Finally, Mandile argues that Clark had a duty to warn First Aviation of advances in alarm technology. Specifically, Mandile points to developments in so-called "smart alarms" and "discriminating alarms" that he avers occurred after 1986 and claims that Clark's failure to warn First Aviation about these developments breached its duty to warn. Appellant's Br. at 22-23. New Jersey law, however, does not require manufacturers to inform customers about every post-sale development concerning a product. Rather, the law requires manufacturers to inform customers about "newly-discovered dangers." Feldman, 479 A.2d at 389. A duty to warn may arise when advances in the state-of-the-art have solved or tempered the risk presented by a long-known danger. See, e.g., Dixon, 637 A.2d at 922-23 (finding that manufacturer of snowthrower had duty to warn consumer of advances in "deadman switch" safety control); Seeley, 606 A.2d at 386 (suggesting that advances in safety technology with regard to brake press imposed duty to warn on manufacturer). Here, however, Mandile did not show that the tow tractor was defective absent the smart or discriminating alarms. Under New Jersey law, "[a] duty to warn arises . . .because without adequate warnings, a product is deemed defective." Straley, 887 F. Supp. at 748 (citing, inter alia, Michalko v. Cooke Color & Chem. Corp., 451 A.2d 179 (N.J. 1982)). Considering that there is no evidence that the tow tractor is defective absent the purportedly new alarms, Clark's failure to warn First Aviation regarding those alarms cannot support a finding of liability.

In sum, Mandile failed to offer any evidence from which a reasonable jury could

have found that Clark discovered or reasonably should have discovered a danger regarding the tow tractor after selling it to First Aviation in 1986. Therefore, the jury's finding that Clark breached its post-sale duty to warn cannot stand and the District Court correctly granted Clark's motion for JMOL.

## III.

For the foregoing reasons, we will affirm the decision of the District Court.