**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

Nos. 11-1593 & 11-2251
_____

DARREN M. NANCE,
                                        Appellant

v.

CITY OF NEWARK; NEWARK POLICE DEPARTMENT; THE MAYOR,
SHARPE JAMES; JOSEPH J. SANTIAGO; THOMAS C. O'REILLY; ROBERT K.
RANKIN, JR.; MITCHELL MCQUIRE; MICHAEL O'CONNOR; JAMES DAVID
O'CONNOR; WILLIE E. UNDERWOOD; IRVING B. GULLER; JOSE OMAR
COLON; CHADRAKANT PATEL; JAMES E. TUNIS; ISABELLA CASTELLANOS;
VINCENT BONGERMINO; JOHN DOES (1-10); RICHARD PARABOSCHI;
NICHOLAS MARESCA; ANTHONY CAMPOS; JOHN ZAKOWSKI
_____

On Appeal from the United States District Court
for the District of New Jersey
(D.C. Civ. No. 97-cv-06184)
District Judge: Honorable Dennis M. Cavanaugh
_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
September 14, 2012

Before: AMBRO, FISHER and GARTH, <u>Circuit</u> <u>Judges</u>

(Opinion filed: October 15, 2012)
_____

OPINION
_____

PER CURIAM

1

Darren M. Nance appeals pro se from the orders of the District Court denying his motions for reinstatement to his former employment and for prejudgment interest following a jury verdict in his favor.  We will affirm in part, vacate in part, and remand for further proceedings.[1]

## I.      Background

Nance was terminated from his position as a police officer for the City of Newark, New Jersey, in 1996.  He later filed suit against the City of Newark, the Newark Police Department and numerous individual defendants (collectively, the "City") alleging that they terminated him in retaliation for whistle-blowing activity and other conduct protected by the First Amendment.  Nance asserted claims under both 42 U.S.C. § 1983 and the New Jersey Law Against Discrimination ("NJLAD"), N.J. Stat. Ann. §§ 10:5-1 to -49.  He also sought both monetary damages and the equitable relief of reinstatement to his position.  Nance was represented by counsel in the District Court, where the parties litigated his claims for some fourteen years.

The parties finally tried the case to a jury for twelve days in June 2010.  On June 24, 2010, the jury returned a verdict in favor of Nance on two claims:  a § 1983 First

---

[1] After noticing a reference to an apparent settlement in a December 9, 2011 letter docketed in the District Court, we directed the parties "to address in their briefs the nature and status of the apparent settlement and whether it has resolved any of the issues presented in these appeals."  We note with displeasure that the parties later filed their briefs on the merits but have not complied with that direction.  Because we have no reason to believe that any potential settlement concerns the issues raised on appeal, however, we proceed to address them.

Amendment retaliation claim based on his petitioning activity, and a "discrimination and/or retaliation" claim under the NJLAD. The next day, the jury returned a general verdict on damages awarding Nance $350,000 in compensatory damages and $250,000 in punitive damages.

Shortly thereafter, Nance filed a motion with the District Court for reinstatement to his former position. The District Court denied that motion by order entered October 20, 2010. Nance filed a motion for reconsideration, which the District Court denied on February 3, 2011. Nance's pro se appeal from that order is docketed at C.A. No. 11-1593. After filing that appeal, Nance requested prejudgment interest on the entire jury award. The District Court denied that request on May 2, 2011. The next day, the District Court formally entered judgment on the jury's verdict. Nance then filed pro se the appeal docketed at C.A. No. 11-2251. The City has not appealed and instead has satisfied the judgment. We consolidated these appeals and now address them together.

## II.    C.A. No. 11-1593

In this appeal, Nance challenges the District Court's order denying his motion for reinstatement to his former position. The City has filed a motion to dismiss this appeal for lack of jurisdiction. We conclude that we have jurisdiction, and we will affirm.

### A.    Jurisdiction

The City argues that this appeal is untimely. According to the City, the District Court entered its judgment when it entered the jury verdict on the docket June 30, 2010. The City characterizes Nance's subsequent motion for reinstatement as a motion to alter

3

or amend that judgment under Rule 59(e) of the Federal Rules of Civil Procedure. It further characterizes Nance's actual Rule 59(e) motion as an improper successive Rule 59(e) motion that does not toll the time to appeal, and it argues that Nance's appeal is untimely because he did not file it within thirty days after the District Court denied his motion for reinstatement.

We reject these arguments. Nance's notice of appeal was due to be filed within thirty days after entry of the "judgment." Fed. R. App. P. 4(a)(1)(A). "With regard to an appeal from a jury verdict, the thirty days does not begin to run—i.e., 'entry of judgment' has not occurred—until the judgment is set forth in a separate document pursuant to Federal Rule of Civil Procedure 58 and the clerk of the court enters the judgment into the civil docket pursuant to Federal Rule of Civil Procedure 79(a)." Local Union No. 1992 of Int'l Bhd. of Elec. Workers v. Okonite Co., 358 F.3d 278, 282 (3d Cir. 2004).

In this case, the jury returned its damages verdict on June 25, 2010 (Docket No. 215), but the District Court did not enter judgment on the docket until May 3, 2011 (Docket No. 255). In the meantime, the District Court denied Nance's motions for reinstatement and reconsideration, and Nance filed his notice of appeal on March 3, 2011. Thus, Nance's appeal is not untimely, because the District Court had not yet entered judgment when he filed it and his time to appeal had not yet begun to run. To the contrary, Nance's notice of appeal was instead premature. That premature notice of appeal has now ripened because the District Court has since entered its final judgment. See DL Res., Inc. v. FirstEnergy Solutions Corp., 506 F.3d 209, 215 (3d Cir. 2007)

(discussing Cape May Greene, Inc. v. Warren, 698 F.2d 179 (3d Cir. 1983)). And Nance filed a second, timely notice of appeal thereafter in any event. Accordingly, the City's motion to dismiss C.A. No. 11-1593 for lack of jurisdiction is denied. We have jurisdiction over both appeals under 28 U.S.C. § 1291.

## B. The Merits

Nance challenges the District Court's denial of his motion for reinstatement to his former position, and he has raised no separate challenge to the District Court's denial of reconsideration of that issue. A wrongfully terminated party can be made whole going forward either by an award of front-pay or by the equitable remedy of reinstatement, but "reinstatement is the preferred remedy in the absence of special circumstances militating against it." Squires v. Bonser, 54 F.3d 168, 173 (3d Cir. 1995). Reinstatement may properly be denied if the relevant circumstances, such as animosity between the parties, make it impracticable. See id. at 172; Starceski v. Westinghouse Elec. Corp., 54 F.3d 1089, 1103 (3d Cir. 1995); Robinson v. Se. Pa. Transp. Auth., 982 F.2d 892, 899 (3d Cir. 1993). The routine and incidental burdens that such relief generally entails, however, are "'usually insufficient, without more, to tip the scales against reinstatement[.]'" Squires, 54 F.3d at 173 (quoting Rosario-Torres v. Hernandez-Colon, 889 F.2d 314, 322 (1st Cir. 1989) (en banc)). To the contrary, "'equitable considerations different in kind or degree from those regularly accompanying reinstatement must be present if reinstatement is to be withheld from the victim of a first amendment infraction.'" Id. (quoting Rosario-Torres, 889 F.2d at 323). We review the District Court's ruling for abuse of discretion

5

and "do not substitute our judgment for that of the district court." Id. at 171.

In this case, the District Court properly recognized the foregoing principles, including the general preference for reinstatement. The court concluded, however, that reinstatement is not warranted for three separate reasons. First, the court concluded that Nance has been deemed psychologically unfit for duty and that, given the unique nature of police work, his reinstatement might pose a risk to public safety. Second, the court concluded that Nance's fourteen-year absence from the police force makes reinstatement impracticable because there have been major changes in police department operations in the interim that would require complete retraining at a time when the Department has had to lay off qualified officers for budgetary reasons. Finally, the court concluded that "the continued and irreparable animosity" between Nance and the defendants would make his reinstatement a "recipe for disaster." The District Court based these conclusions both on materials that the City submitted in opposition to Nance's motion for reinstatement and on its observation of the evidence at trial.

Nance raises numerous (though cursory) arguments addressed to this ruling. Most of them challenge the District Court's assessment of the evidence presented at trial. We cannot review these arguments, however, because Nance has not ordered the trial transcripts and they are not otherwise of record. See Fed. R. App. P. 10(b)(2) ("If the appellant intends to urge on appeal that a finding or conclusion is unsupported by the evidence or is contrary to the evidence, the appellant must include in the record a

6

transcript of all evidence relevant to that finding or conclusion.").[2] Nance argues, for example, that evidence introduced at trial establishes that he is psychologically fit to perform the duties of a police officer. Nance, however, has neither identified that evidence nor made it available for our review. Consequently, Nance's arguments in this regard provide no basis to conclude that the District Court abused its discretion.[3]

Liberally construing Nance's brief, we discern two arguments that the absence of the trial transcript does not prevent us from reviewing. First, Nance argues that the District Court "failed to adhere" to the controlling legal standard under Squires by failing to recognize that reinstatement is the preferred remedy. (Appellant's Br. at 8, 10.) As explained above, however, the District Court expressly acknowledged that principle but concluded that three considerations make reinstatement impracticable in this case.

---

[2] Nance is not indigent and is therefore ineligible for transcripts at the Government's expense (which he did not request in any event). See 28 U.S.C. §§ 753(f), 1915(c). Although Nance's failure to order the transcript "constitutes grounds for dismissal of the appeal," 3d Cir. LAR 11.1 (2010), we will not take that step.

[3] The same applies to Nance's arguments that the District Court failed to take judicial notice of evidence presented at trial and that no testimony or other evidence presented at trial supported the District Court's conclusion regarding animosity between the parties. We have nevertheless considered whether the District Court's reliance on Nance's unfitness for duty might impermissibly conflict with the jury's verdict, cf. Squires, 54 F.3d at 174 & n.11, but we cannot say on this record that it did. Without a transcript of the evidence presented at trial or the jury instructions, we cannot determine whether the jury necessarily rejected a defense based on Nance's alleged unfitness for duty. We can surmise at most that the jury determined that Nance's protected activity was a but-for cause of his termination, see id. at 174 n.11, but we cannot say that the jury necessarily found that Nance is presently fit for duty, psychologically or otherwise. Nance also argues that the District Court "[i]mproperly relitigated" a 1992 administrative decision, but he provides no details in that regard. (Appellant's Br. at 8.)

7

Second, Nance challenges the District Court's reliance on the second of those considerations—the passage of time and resultant necessity of retraining. In assessing that factor, the District Court relied on an affidavit by the City's Police Director, who stated that the fourteen-year passage of time would require "complete retraining" for Nance at a time when the City was facing the prospect of 200 layoffs or demotions for its otherwise qualified police officers. Nance submitted countervailing affidavits from the President and the Second Vice President of the City's Fraternal Order of Police, both of whom stated, among other things, that any necessary retraining would be minimal and that Nance would have only to be "brought up to speed" on policy developments and the like. Nance argues that the District Court abused its discretion by failing to consider these affidavits. It is true that the District Court did not mention these affidavits, which is troubling. The question ultimately before us, however, is whether the District Court's ruling constitutes an abuse of discretion. We are unable to conclude that it does.

There is no indication from the District Court's opinion that, even if it were persuaded by Nance's affidavits on the issue of retraining, its ultimate ruling would have been different. To the contrary, the District Court based its ruling also on the separate consideration of continued animosity between the parties. In that regard, it expressly relied on its observation of the testimony at trial in concluding that "[t]o reinstate Plaintiff Nance would mean to re-add a key ingredient to a formula for disaster." As the City argues, these are "[s]trong words from a respected jurist who expressly recognized that reinstatement was a preferred remedy." (Appellees' Br. at 13.) The District Court, as it

8

was required to do, "articulate[d] its reasons when denying reinstatement." Squires, 54 F.3d at 174 n.9. The District Court's failure to discuss Nance's evidence regarding one of those reasons is not enough for us to conclude that its ruling constitutes an abuse of discretion, particularly given the absence of a transcript of the trial that the District Court observed and that expressly informed its decision. See Starceski, 54 F.3d at 1103 ("The district court was in a much better position [than us] to determine whether or not reinstatement was feasible based on the testimony and evidence at trial.") (quotation marks omitted) (alteration in original). For these reasons, we will affirm the District Court's order denying Nance's motion for reinstatement.[4]

### III. C.A. No. 11-2251

Nance also appeals from the District Court's order denying his motion for prejudgment interest. Nance sought, and the District Court denied, interest on both the compensatory and punitive portions of the jury's award. On appeal, Nance requests reversal only as to the denial of interest on the compensatory portion. As the City argues, he has thus waived any challenge to the denial of interest on the punitive portion. There is no basis to disturb that ruling in any event because prejudgment interest is not available on punitive damages awards. See Belinski v. Goodman, 354 A.2d 92, 96 (N.J. Super. Ct. App. Div. 1976) (applying New Jersey law); Poleto v. Consol. Rail Corp., 826 F.2d 1270,

---

[4]In light of our disposition, we need not reach the City's alternative argument that reinstating Nance would provide him with a double recovery to the extent that the jury's verdict might already include front-pay damages. See Squires, 54 F.3d at 176.

9

1278 n.14 (3d Cir. 1987), <u>abrogated on other grounds by</u> <u>Kaiser Aluminum & Chem.</u>

<u>Corp. v. Bonjorno</u>, 494 U.S. 827, 834-35 (1990) (applying federal law).[5] As to the

compensatory portion of the award, however, we will vacate and remand for further

proceedings.[6]

We review the District Court's determination of whether to award prejudgment

interest for abuse of discretion.  <u>See</u> <u>Booker v. Taylor Milk Co.</u>, 64 F.3d 860, 868 (3d Cir.

1995) (addressing prejudgment interest under Title VII).  When a plaintiff has been

awarded some amount of backpay damages, however, there is a "strong presumption" in

favor of awarding prejudgment interest in order to make the plaintiff whole.  <u>Id.</u> at 868.

Thus, "[t]o the extent . . . that the damages awarded to the plaintiff represent

compensation for lost wages, it is ordinarily an abuse of discretion <u>not</u> to include pre-

judgment interest."  <u>Gierlinger v. Gleason</u>, 160 F.3d 858, 873 (2d Cir. 1998) (quotation

marks omitted) (addressing prejudgment interest on a § 1983 retaliation claim); <u>see also</u>

---

[5] The availability of prejudgment interest on state-law claims is governed by state law, while the availability of such interest on claims under § 1983 is governed by federal law. <u>See</u> <u>Simmons v. City of Phila.</u>, 947 F.2d 1042, 1088 (3d Cir. 1991); <u>Poleto</u>, 826 F.2d at 1274 & n.6.  In this case, the jury entered a single compensatory award on Nance's claims under both the NJLAD and § 1983.  Neither the parties not the District Court addressed this issue, but the jury's general verdict presents no problem in this regard because there is no conflict between New Jersey and federal law on the points addressed herein.

[6] Nance's pro se brief requests reversal as to the compensatory portion but does not develop any argument on this issue.  As explained below, however, the District Court did not provide any meaningful analysis of this issue either.  In addition, the City has not argued that Nance has waived this issue and instead has briefed it on the merits.  Under these circumstances, we will exercise our discretion to address the merits as well.

Potente v. Cnty. of Hudson, 900 A.2d 787, 793 (N.J. 2006) (noting policies supporting prejudgment interest awards under the NJLAD).[7]

In this case, the District Court summarily denied Nance's request for prejudgment interest on the grounds that (1) New Jersey law does not permit prejudgment interest on awards for future economic loss and (2) "it cannot be determined whether the [general] jury verdict is for non-economic loss or for future economic loss." We agree that prejudgment interest is not available under state or federal law on any portion of the award that might be attributable to future economic loss. See Thabault v. Chait, 541 F.3d 512, 533-34 (3d Cir. 2008) (applying New Jersey law); Poleto, 826 F.2d at 1278 n.14 (applying federal law); see also Gierlinger, 160 F.3d at 875 ("an award of prejudgment interest is not appropriate with respect to an award of damages for future losses" under § 1983). We conclude, however, that the District Court should have inquired more thoroughly into whether the award includes some identifiable component of past economic damages on which prejudgment interest generally should be awarded.

Instead of conducting that inquiry, the District Court relied on Mandile v. Clark Material Handling Co., 303 F. Supp. 2d 531, 536 (D.N.J. 2004), aff'd, 131 F. App'x 836

---

[7] We previously held, in part on the basis of intermediate New Jersey appellate authority, that New Jersey law prohibits prejudgment interest against governmental entities on claims under the NJLAD. See Hurley v. Atlantic City Police Dep't, 174 F.3d 95, 130 (3d Cir. 1999) (citing, inter alia, Maynard v. Mine Hill Twp., 582 A.2d 315, 318 (N.J. Super. Ct. App. Div. 1990)); Coleman v. Kaye, 87 F.3d 1491, 1511 (3d Cir. 1996) (same). The New Jersey Supreme Court has since clarified that prejudgment interest is indeed available against governmental entities under the NJLAD. See Potente, 900 A.2d at 794.

11

(3d Cir. 2005), for the proposition that the jury's general verdict prevented the court from determining the nature of the jury's award. That decision in turn relied on Poleto, in which we noted in dicta that the case before us "would allow for the practical application of prejudgment interest" because "the district court submitted carefully crafted special interrogatories to the jury that segregated past economic damages from . . . future economic damages." Poleto, 826 F.2d at 1277. We contrasted that situation with situations in which the jury returns a general verdict and noted the "suggest[ion]" that a general verdict might be presumed already to account for prejudgment interest. Poleto, 826 F.2d at 1277. We neither held nor opined, however, that parties must always request special interrogatories on the issue of damages or that the nature of a jury award can never be determined from a general verdict. To the extent that Mandile suggests otherwise, we reject it.[8]

We find more persuasive for present purposes another decision on which the District Court relied but which does not actually support its ruling, Crowley v. Chait, No. 85-2441, 2005 U.S. Dist. LEXIS 40828 (D.N.J. Sept. 30, 2005) (not available in Westlaw). The District Court relied on Crowley without further comment for the

---

[8]We emphasize that requesting special jury interrogatories to facilitate the calculation of damages benefits both the litigants and the District Court and remains the better practice. See Simmons, 947 F.2d at 1088 (noting "the advisability of requesting separate verdicts on federal question and state pendent claims so as to facilitate the calculation of delay damages"). We have never held that requesting such interrogatories is necessary to preserve a claim for prejudgment interest, however, and we decline to do so now. Cf. Squires, 54 F.3d at 176 n.16 (noting the possibility of requiring a request for a jury

12

proposition that "the New Jersey Court Rules contemplate that the jury must return discrete verdicts as to past and future economic loss." Id. at \*18-19. In Crowley, however, the jury awarded a lump sum without the special interrogatories addressed to past and future harm that the court held New Jersey law requires. See id. at \*16. Instead of merely assuming that the absence of such interrogatories made it impossible to determine whether the award included some identifiable component of past harm, the court went on to "carefully review[] the record" and determine what portion of the lump-sum award was attributable to past harm and thus warranted prejudgment interest. Id. at \*21. The District Court's reliance on Crowley in support of its summary denial is thus somewhat puzzling.

The Second Circuit Court of Appeals has taken an approach similar to that in Crowley in a case involving a claim of retaliatory termination under § 1983, which we find persuasive as well. See Gierlinger, 160 F.3d 858. In Gierlinger, the District Court denied prejudgment interest on a jury's lump-sum award because it assumed that the award already included prejudgment interest. See id. at 874. The Second Circuit vacated and remanded after declining to assume that the award included either prejudgment interest or future damages. See id. at 874-75. Instead of making that assumption, the Second Circuit looked to the record—including the verdict form, the evidence presented at trial, and the jury instructions—in order to determine, inter alia, whether there was "a

interrogatory on the issue of front-pay damages in order to preserve a claim for reinstatement).

13

reasonable basis for inferring that part of the jury's award sought to compensate for future losses[.]" Id. at 875. The court saw no such basis in that case, and the available record discloses no such basis in this case either.

To the contrary, the available record suggests that the jury may not have awarded anything for future loss at all. That record includes the jury verdict form itself, which asked the jury only to "[p]lease state the amount that will fairly compensate Plaintiff for any injury which he actually sustained as a result of the City of Newark's conduct which shall include physical harm, emotional and mental harm and lost wages (income)." (Docket No. 215) (emphasis added). The verdict form says nothing about future losses. Moreover, the City represents in its brief that "[p]laintiff presented opinion testimony about projected future economic losses, losses that allegedly exceeded $500,000." (Appellees' Br. at 9.) Because the jury awarded only $350,000 in compensatory damages, it may be that the jury awarded nothing for future loss. And even if it did, the lack of significant analysis by the District Court gives us no assurance that it is impossible to determine how much. We cannot and do not conclusively resolve this issue because the trial evidence and jury instructions are not contained in the record on appeal. The materials that are contained in the record, however, lead us to conclude that the District Court should have addressed this issue more thoroughly.

Thus, we will vacate and remand for the District Court to determine whether the jury's award includes some identifiable component of past economic damages on which prejudgment interest should be awarded. The District Court is free to conduct such

14

further proceedings as may prove necessary in that regard, such as requiring briefing by the parties.

## IV.    Conclusion

In sum, we will affirm the District Court's order of October 20, 2010, denying reinstatement, but will vacate its order of May 2, 2011, denying prejudgment interest and remand for further proceedings on that issue.  The City's motion to supplement the appendix in both appeals is granted, and its motion to dismiss C.A. No. 11-1593 for lack of jurisdiction is denied.